**Evelyn Ann BALES, etc.**

v.

**Wayland A. CLARKE, Jr., et al.**

**Civ. A. No. 80–0568–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 16, 1981.

---

**19.** N.Y. Times, Oct. 3, 1981, at 29.

John M. Oakey, Jr., Richmond, Va., for plaintiff.

William M. Sokol, Fredericksburg, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

### I. INTRODUCTION

Plaintiff, a handicapped child, alleges that defendants, the Superintendent of King George County Schools, King George, Virginia, and members of the King George County School Board, have failed to provide her with a "free appropriate public education" as required by the Education of Handicapped Children Act, 20 U.S.C. § 1412(1) and by the Code of Virginia, § 22.1–214(A). Plaintiff sues for reimbursement of various expenses incurred by her parents, including the cost of summer programs for plaintiff and the parents' travel expenses while plaintiff was a patient and student at the Home for Crippled Children in Pittsburg, Pennsylvania. Plaintiff additionally requests that the Court direct defendants to place her in Accotink Academy, a private school for handicapped children, and to pay

all educational and travel expenses incident thereto.

■ The case was tried without a jury on 7 August 1981. At the close of the evidence, counsel were requested to submit briefs to the Court. On 28 August plaintiff filed her brief; defendant responded on 8 September. Plaintiff filed a rebuttal brief on 11 September. The Court is now called upon to determine if under the facts presented defendants have provided plaintiff with a "free appropriate education" within the mandate of the federal and State statutes. The State is not required to pay all of the expenses incurred by parents in educating a child, whether the child be handicapped or non-handicapped. The State is also not required to provide a perfect education to any child, and the Court is not called upon to determine whether plaintiff's education could have been better. Rather, the Court must ascertain in the light of educational theories over which experts often disagree if the education provided plaintiff was, under the law, "appropriate." [1] Upon consideration of the testimony, the exhibits, the depositions, and the briefs, the Court finds for the defendants.

## II. FINDINGS OF FACT

1. Plaintiff, who was born on 6 September 1968, received severe head trauma when she was injured in an automobile accident on 11 April 1977.

2. Plaintiff was given extensive testing in the University of Virginia Children's Rehabilitation Center in August of 1977. Plaintiff was discharged from the Rehabilitation Center in August.

3. In the fall of 1977, plaintiff was placed in a self-contained class with speech and language therapy in the King George County School System until a total rehabilitation program could be selected for her.

4. On 30 November 1977, plaintiff was accepted for treatment at the Home for Crippled Children in Pittsburgh, Pennsylva-

nia. Plaintiff remained there until 8 June 1979. Plaintiff was provided tuition assistance by defendants for the years 1977 to 1979.

5. Plaintiff's parents made trips to the Home for Crippled Children in Pittsburgh. Plaintiff's parents did not request reimbursement for travel for the 1977–78 school year. The School Board approved $375 for transportation for the plaintiff for the 1978–79 school year. The sum was the total amount permitted by policies of the Virginia State Department of Education.

6. In May of 1979, prior to plaintiff's release from the Home for Crippled Children, plaintiff's father requested that defendants provide plaintiff with a summer language therapy program. On 13 June 1979, the King George County School Board denied this request.

7. Plaintiff's parents hired Elizabeth Sanders to provide speech therapy to plaintiff three times a week from 25 June 1979 to the middle of August, 1979. Mrs. Sanders could not testify whether this therapy was necessary to maintain plaintiff's skills.

8. Also in May of 1979, plaintiff's parents determined that plaintiff should attend Accotink Academy in Springfield, Virginia, a private school for severely handicapped children.

9. Accotink Academy has a program appropriate to a child with plaintiff's disabilities. However, at Accotink Academy, plaintiff is exposed to children with severe emotional disabilities and cannot interact with non-handicapped children. Plaintiff's attendance at Accotink Academy also creates an unreasonably burdensome transportation problem.

10. The King George County School's Eligibility Committee met and recommended that plaintiff be placed in the Regional Special Education Center for Planning District 13 at Walker-Grant School in Fredericksburg, Virginia.

1. The Court is not without sympathy for the approach to such cases signified by the Second Circuit in its opening sentences in *Rowley v. Board of Education*, 632 F.2d 945, 946 (2d Cir. 1980): "This case is about Amy. She is eight years old." The Court's sympathy, however, may not be permitted to subvert the realization that this is a case about the law.

11. Plaintiff's parents appealed from this determination. On 10 September 1979, a hearing was held before a hearing officer designated in accordance with State law. After considering the testimony of eight witnesses, the officer affirmed the decision of the Eligibility Committee.

12. This decision was appealed. On 19 December 1979, an appeal hearing was held at which eight witnesses testified. After an unconscionable delay, on 5 January 1981 the hearing officer, Gary A. Howard, upheld the initial decision.

13. On 27 September 1979, plaintiff's parents and representatives of the King George County Schools and the Regional Special Educational Center met to develop an individualized education program (IEP) for plaintiff. Plaintiff's parents submitted a massive proposal for an IEP which they knew or should have known could not reasonably be implemented. Plaintiff's parents objected to the proposed IEP submitted by the King George County Schools.

14. Plaintiff entered the Regional Special Education Center on 27 September 1979. The King George County Schools and the Regional Center implemented a program planned and administered by a team including a psychologist, a speech and language clinician, a speech and language pathologist, the principal of the school, and the superintendent of King George County schools. The parents refused formally to approve the program yet submitted their child to it.

15. Through the efforts of this team and despite plaintiff's parents' continual criticisms and complaints, plaintiff progressed academically and emotionally during the 1979–80 school year.

16. In the summer of 1980, plaintiff's parents enrolled her in Accotink Academy for a summer program. Plaintiff's counsel wrote the superintendent of King George County Schools, stating that plaintiff's parents would look to defendants for all expenses of this summer program.

17. On 5 May 1980, plaintiff's parents, plaintiff's attorney, and representatives of King George County Schools and the Regional Center met to develop an IEP for plaintiff for the 1980–81 school year. Plaintiff's parents again objected to the proposed IEP.

18. Another program was implemented for plaintiff for the 1980–81 school year, again involving the efforts of a team of representatives. Again plaintiff's parents refused formally to agree to the IEP.

19. Plaintiff progressed academically and emotionally during the 1980–81 school year.

20. In November, 1980, the Virginia Department of Education, Administrative Review Service, evaluated the Fredericksburg City Schools, including the Regional Center. The service found that the Regional Center was in compliance with State law.

21. The physical education provided to the plaintiff from 1979 to 1981, while not ideal, was appropriate.

22. Language therapy provided by the defendants was appropriate.

23. Defendants have provided appropriate psychological services.

24. The program provided plaintiff between 27 September 1979 to date has been appropriate, and the program planned for her for the 1981–82 school year is appropriate.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1331(a) and 20 U.S.C. § 1415(e)(2).

2. The Education of the Handicapped Act, 20 U.S.C. §§ 1401–61 (1978), requires that each State, in order to qualify for assistance under the Act, establish a policy and plan that "assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1) and § 1413.

3. Virginia has enacted such a plan in the Special Education Act, Va.Code §§ 22.-1–213 to 222 (1980).

4. Virginia Code § 22.1–214(A) requires the Board of Education to design a program insuring:

that all handicapped children have available to them a free and appropriate educa-

tion, including special education designed to meet the reasonable educational needs of such children.

5. Va.Code § 22.1–218(A) provides:

If a school division is unable to provide a free appropriate public education to a handicapped child and it is not appropriately available in a State facility, it shall offer to place the child in a nonsectarian private school for the handicapped approved by the Board of Education or such other licensing agency as may be designated by State law. The school board of such division shall pay to, or on behalf of, the parent or guardian of such child the reasonable tuition cost and other reasonable charges as may be determined by the Board of Education.

Because the defendants can provide and have provided the plaintiff with an "appropriate education" in a regional public facility, the Regional Special Education Center, the defendants are under no legal duty to provide funds for the plaintiff to attend Accotink Academy.

6. When a handicapped child is placed in a private school under the provisions of § 22.1–218(A) of the Virginia Code, the school board is to pay "other reasonable charges" in addition to tuition. The State regulations for reimbursement provide for the payment of the actual costs of special transportation for handicapped children. However, neither the Virginia statute, the Virginia regulations, nor the federal act provides funding expenses for parents' transportation.

7. In conformity with 20 U.S.C. § 1415(b)(2), Virginia Code § 22.1–214(B) requires the Board of Education to:

Prescribe procedures to afford due process to handicapped children and their parents or guardians and to school divisions in resolving disputes as to program placements, individualized education programs, tuition eligibility, and other matters as defined in state or federal statutes or regulations.

Defendants provided plaintiff with due process hearings. Through no fault of defendants, the person selected as the appeal hearing officer disregarded his duty to render a prompt decision.

8. Plaintiff has not shown that a summer program was required for her during the summers of 1979 and 1980. Plaintiff cites *Armstrong v. Kling*, 476 F.Supp. 583, *aff'd sub nom. Battle v. Pennsylvania*, 629 F.2d 269 (3d Cir. 1980). *Armstrong* did not hold that all severely handicapped children regress during summer vacations so as to require summer programs. It is understood by educationists that all children regress academically during vacations. Yet no law requires all children be offered summer school. The evidence here is that Evelyn's regression was not extraordinary nor irretrievable. Her parents' concern, and Mrs. Bales is an educationist, did not lead them to implement the home study course offered to them for Evelyn by the King George school system.

9. Plaintiff bears the burden to establish that the Regional School is inappropriate, that no other State facility is appropriate, and that Accotink Academy is appropriate. Plaintiff has not met this burden.

## III. SUMMARY

The central question presented in this case is whether the King George County Schools have provided and will provide an "appropriate" education for plaintiff. An appropriate education is not synonymous with the best possible education. *Springdale School District v. Grace*, 494 F.Supp. 266, 272 (W.D.Ark.1980). It is also not an education which enables a child to achieve his full potential: "even the best public schools lack the resources to enable every child to achieve his full potential." *Rowley v. Board of Education*, 483 F.Supp. 528, 534 (S.D.N.Y.1980). Plaintiff's parents are seeking an ideal education for their child. Their aspirations are understandable, even admirable. But neither they nor any other parents have the right under the law to write a prescription for an ideal education for their child and to have the prescription filled at public expense. The

law requires an appropriate free education. Efforts to build this requirement into something more will threaten the substantial gains already made in the education of the handicapped.

The opinions expressed by Dr. Peck and Dr. Will do not benefit plaintiff's case. These experts, candidly and avowedly, approached the questions presented to them from the point of view of "maximizing" plaintiff's educational opportunities. While they are undoubtedly correct in their prescription for the best possible program, such a program is not required by law.

No witnesses could testify that the Regional School program was inappropriate. One of plaintiff's experts testified that the proper goal was to achieve "maximum educational progress" through the "best" education available, without regard to costs. Under such a criterion the Regional School would be inappropriate. The argument that costs should not be considered in determining what is appropriate wholly overlooks the fact that cost is very much a factor in determining what is an appropriate education for non-handicapped children. No language in State or federal law can properly be read as mandating that costs may not be considered in determining what education is appropriate for a child—handicapped or non-handicapped. Thus, such factors as the difference in travel costs between Accotink Academy and the Regional Center must be considered in determining the appropriateness of the schools.

At the trial various school personnel responsible for the plaintiff's education testified concerning the Regional program and the progress plaintiff has made in the program. The witnesses from the Regional Center, all trained professionals, testified that a quality education has been and will be provided at the Regional Center. The Court is impressed with the excellent program offered by the Regional Center, and is pleased, even mildly surprised, with the dedication, concern, and competence of the teachers. Plaintiff has been provided with one-on-one instruction one to two hours per day with the teacher, one-on-one language

therapy several hours per week, group speech therapy two or three hours per week. Plaintiff has made consistent progress, and the school psychologist testified that plaintiff is performing at the expected level for her age and ability, given her handicap.

During both school years, plaintiff's teacher held physical education classes with the plaintiff. There is no testimony before the Court that adaptive physical education was necessary for the two school years. In 1981 plaintiff's parents and the Regional Center concluded that an adaptive physical education program should be implemented, and a program will be provided in the 1981–82 school year.

Also, psychological services were available for the plaintiff and would have been provided for her if necessary. The Court does not accept that psychological counseling must be provided to all handicapped children, in the absence of serious behavioral problems. The law does not set forth such a requirement.

■ Plaintiff objects to the sexual composition of the classroom. Neither the federal nor the State statutes mandate the sexual composition of a class. The experts agree that it would be beneficial if both sexes were represented in the classroom. Because there are no girls at the present time, that benefit is lost. Such loss does not make the classroom setting inappropriate. Plaintiff is also not entitled to year-round schooling without showing an irreparable loss of progress during summer months. See *Anderson v. Thompson*, 495 F.Supp. 1256, 1266 (E.D.Wis.1980). Plaintiff has not met her burden of showing such loss.

Plaintiff's parents correctly point out imperfections in the Regional Center. But such imperfections have each been considered singly by the Court, and they have been considered in the aggregate. They do not render the offering of the Regional Center inappropriate. As with any new venture, and education of the handicapped in public schools is relatively new, there are errors and omissions. But the existence of

imperfection in the education of Evelyn Bales does not mean she is not securing an appropriate education under the law.

Unfortunately, plaintiff's parents have failed to cooperate with the King George County Schools or with the Regional Center. Almost from the beginning, plaintiff's parents adopted an adversary relationship with the defendants. The atmosphere of a cooperative endeavor to seek the child's well-being was absent. There was instead an atmosphere of suspicion and mistrust with a decided emphasis on legal rights and entitlements at the forefront of the parents' approach. Counsel for plaintiff argues that the parents' constant complaints, criticism and intimidation led to improvements in plaintiff's education. But we will never know what a cooperative, constructive, appreciative attitude may have wrought.

Judgment shall issue for the defendants.