**Bobby R. ROWE, Gail Rowe, Appellants,**

v.

**HENRY COUNTY SCHOOL BOARD, Appellee.**

**Bobby R. ROWE, Gail Rowe, Appellees,**

v.

**HENRY COUNTY SCHOOL BOARD, Appellant.**

Nos. 82–1746, 82–1747.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1983.

Decided Sept. 26, 1983.

---

**116**

M. Lanier Woodrum, Roanoke, Va. (David B. Hart, Woodward, Fox, Wooten & Hart, Roanoke, Va., on brief), for appellant.

L. Dale McGhee, County Atty., Bassett, Va., for appellee.

Before RUSSELL, PHILLIPS and MURNAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Proceeding under the judicial review provisions of the Education for All Handicapped Children Act of 1975 (the Act), 20 U.S.C. §§ 1401 *et seq.*, the parents of Bobby Rowe, Jr., a child with a severe learning disability, appeal from the district court's denial of their request for tuition reimbursement for the costs incurred by them in sending Bobby to a private residential school for the handicapped during the 1980–81 and 1981–82 school years. The Henry County School Board, defendant below, cross-appeals from the district court's conclusion that the Henry County School System (School System) is "unable to provide an appropriate free education" to Bobby and therefore is required to offer to place Bobby at the state's expense in an approved private educational facility tailored to his needs. We hold that the district court correctly determined that the rationale of our decision in *Stemple v. Board of Education,* 623 F.2d 893 (4th Cir.1980), *cert. denied,* 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), bars the Rowes' claim for tuition reimbursement, and we therefore affirm that portion of the judgment below. We further hold that, because the Rowes have moved from the Henry County School District, the question of whether the School System can now provide Bobby with a free appropriate public education is moot, and we therefore vacate that portion of the district court's order requiring the School Board to offer to place Bobby in a private school at the state's expense.

I

Bobby, now age sixteen, attended Henry County schools in the Commonwealth of Virginia from kindergarten to the fifth grade, when he was enrolled in the Mount Olivet Elementary School. During that school year, which spanned 1977–78, Bobby's lack of educational progress became obvious, and prompted special testing by the School System. It was determined at

that time that Bobby suffered from a severe learning disability (LD). Although the School System reserved a place for Bobby for the following school year in Mount Olivet's self-contained learning disability center, Bobby's parents placed him in the Martinsville Christian School during the 1978–79 and 1979–80 school years.

In January of 1980, when Bobby was a seventh-grader at the Martinsville school, he was given a battery of tests by Dr. Watson, a private, licensed school psychologist. Dr. Watson recommended that Bobby receive "the maximum amount of remediation possible," either in a full-time, self-contained LD classroom or in a private residential school designed especially for children with learning disabilities.

To determine whether the Henry County School System could provide Bobby with such a program, the Rowes contacted the School System, which then developed an individualized educational program (IEP) for Bobby. The Rowes ultimately rejected the School System's proposal and, in the fall of 1980, placed Bobby in The Pine Ridge School in Vermont, one of the schools recommended by Dr. Watson. The Pine Ridge School is also approved by the Commonwealth of Virginia as a learning disability school.

The Rowes subsequently applied to the School System for tuition assistance, as authorized in Va.Code § 22.1–218 (1980)[1] to compensate them for the costs of sending Bobby to The Pine Ridge School. Their request was denied originally by the School System, later by an Independent Hearing Officer and finally, on August 24, 1980, by a second Independent Hearing Officer. The Rowes then filed this suit in the district court pursuant to § 615(e)(2) of the Act, 20 U.S.C. § 1415(e)(2).

After a hearing, the district court held that the Rowes' request for tuition reimbursement was barred on the basis of this court's decision in *Stemple v. Board of Education,* 623 F.2d 893 (4th Cir.1980), which held that § 615(e)(3) of the Act, 20 U.S.C. § 1415(e)(3), "negates any right on the part of parents ... to elect unilaterally to place their child in private school and recover the tuition costs thus incurred." The court further determined that the Henry County School System "is unable to provide an appropriate free education to Bobby Rowe, Jr. at the present time," and ordered the School System to comply with Va.Code § 22.1–218, which requires the School System in such cases to "offer to place the child in a nonsectarian private school for the handicapped approved by the Board of Education or other such licensing agency as may be designated by State law," and to pay the "reasonable tuition cost and other reasonable charges" of such placement. From this judgment, both parties appealed.

## II

The district court relied solely on § 615(e)(3) of the Act, 20 U.S.C. § 1415(e)(3), as interpreted by our decision in *Stemple v. Board of Education,* 623 F.2d 893 (4th Cir.1980), in denying the Rowes' request for tuition reimbursement for the school years (1980–81 and 1981–82) spent by Bobby at The Pine Ridge School. Section 615(e)(3) provides that

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, *the child shall remain in the then current educational placement* of such child, or, if applying for initial admission to a public school, shall, with the

---

1. States are eligible for federal funding under the Act if they establish a plan that "assures all handicapped children the right to a free appropriate public education." 20 U.S.C. §§ 1412(1) & 1413. "Among the conditions which a state must meet in order to receive financial assistance is that of providing education to handicapped children in private schools at no expense to their parents if they are placed in private schools as a means of carrying out the state's duty to provide them special education." *Hessler v. State Board of Education,* 700 F.2d 134, 137 (4th Cir.1983) (Winter, C.J.). Virginia maintains such a plan, which is codified at Va.Code §§ 22.1–213 to –222 (1980 & Supp. 1983). *See Bales v. Clarke,* 523 F.Supp. 1366 (E.D.Va.1981).

consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed (emphasis added).

In *Stemple,* we held that, although the duty imposed by § 615(e)(3) to maintain the educational status quo during the pendency of any proceedings under that Act may not be directly enforceable by the courts, "it certainly negates any right on the part of the parents ... to elect unilaterally to place their child in private school and recover the tuition costs thus incurred." *Id.* at 897. We further held that the parents' duty not to breach the status quo "arises as soon as school authorities make a decision as to the identification, evaluation and placement of a handicapped child and continues until a decision not to contest it is reached, or, if a contest ensues, until that contest is finally determined." *Id.* at 898. Thus, we concluded in *Stemple* that, where a school proposed a specific program for a handicapped child in January of 1976, and the program was followed until May of that year when the student's parents withdrew her to place her in a private residential school for handicapped children, no tuition reimbursement was warranted even if the parents did not decide to contest the suitability of the public school's program until *after* they had enrolled their child in private school. *Id.*

This case presents a more difficult factual pattern than that present in *Stemple.* Here, the School System reserved a sixth-grade spot for Bobby in its self-contained learning disability program for the 1978–79 school year, when the Rowes enrolled Bobby in the Martinsville Christian School. Were the Rowes seeking tuition reimbursement for the two years spent by Bobby at Martinsville, *Stemple* would clearly control to prohibit such an award.

Instead, however, the Rowes are attempting to recover for the costs of sending Bobby to The Pine Ridge School during the 1980–81 and 1981–82 school years. This placement was made by them after they received the recommendation from Dr. Watson that Bobby receive "the maximum amount of remediation possible," and after the School System (in early 1980) proposed an IEP—effective immediately for the remainder of Bobby's year as a seventh-grader—intended to meet Bobby's special needs.

Based on this variation from the precise *Stemple* factual pattern, the Rowes seek to characterize their 1980 decision to reject the School System's plan as an application for "initial admission" to the public school.[2] So characterized, their unilateral decision to place Bobby in The Pine Ridge School would not run afoul of the status quo bar of § 615(e)(3), which provides that, during the pendency of proceedings to challenge the School System's proposed program upon an initial admission, a child may be placed in public school only "with the consent of his parents." *See Hessler v. State Board of Education,* 700 F.2d 134, 139 (4th Cir.1983) (Winter, C.J.).

We agree with the district court, however, that once the Henry County School System in 1978 identified Bobby Rowe's educational problem and offered to place him in a special LD program upon his entering the sixth grade that fall, the Rowes incurred a duty not to alter Bobby's school placement "until a decision not to contest [the School System's placement decision] is reached or, if a contest ensues, until that contest is finally determined." *Id.* at 898. The Rowes' subsequent decision to remove Bobby to private school violated that duty and acted to negate whatever right they possess[3] to recover from the School System

---

**2.** The Rowes also seek to distinguish our decision in *Stemple* on the ground that in this case, unlike *Stemple,* the district court specifically determined that the School System was unable to provide Bobby with a free appropriate public education within the meaning of the Act and that here, again unlike *Stemple,* Bobby has not reenrolled in the public school. Neither of these factors, however, is relevant to *Stemple*'s

conclusion that parents who breach the status quo during the pendency of proceedings initiated pursuant to the Act are not entitled to back tuition.

**3.** In this regard we note that three Courts of Appeals have held since our decision in *Stemple* that the Act simply does not empower courts to award reimbursement to parents who

their tuition payments to The Pine Ridge School.

Our conclusion, though not narrowly compelled by the *Stemple* facts, is suggested by its logic. There exists no reason to treat parents who, like the Rowes, unilaterally withdraw their child from public school upon their determination that the school system's proposed special education placement is inadequate and subsequently reapply but continue to find the system wanting, more favorably from those parents who, as in *Stemple*, take only the first of the above-described steps before requesting tuition reimbursement. Without imputing any devious motive to the parties herein, or to any parents choosing to follow the route taken by the Rowes, we believe that recognizing such an exception to the *Stemple* principle would result in the creation of incentives at odds with the purposes of the Act. Although at some point an original decision to withdraw a child from the public school system might be sufficiently unconnected temporally or circumstantially from a subsequent application for admission so as to justify departing from the *Stemple* principle, we do not find that point to have been reached in this case.

Thus, we hold that the district court properly denied the Rowes' request for tuition reimbursement because the Rowes decided to send Bobby to The Pine Ridge School after the Henry County School System proposed a special program for Bobby's sixth grade,[4] but before the final resolution of the Rowes' later claim that the School System was unable to provide Bobby with a free appropriate public education within the meaning of the Act.

## III

The Henry County School System has cross-appealed from that portion of the district court's judgment finding that the Henry County School System is unable to provide a free appropriate public education to Bobby, and its concomitant order requiring the School System to comply with Va.Code § 22.1–218, which requires the school board to offer to place Bobby in a "nonsectarian private school for the handicapped" approved by a designated state agency and to pay the "reasonable tuition cost and other reasonable charges" of such placement.

In ordinary cases arising under the Act, a challenged IEP, though prepared of necessity for only one school year, is subject to judicial review even after the conclusion of that year, because the alleged deficiencies in the school's proposal are "capable of repetition as to the parties . . . yet evading review." *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 3040 n. 9, 73 L.Ed.2d 690 (1982); *Doe v. Anrig,* 692 F.2d 800, 804 (1st Cir.1982).

In this case, however, we were informed by counsel during oral argument that the Rowes no longer reside within the Henry County School District. Therefore, the issue of the appropriateness of the educational program proposed by the School System, which implicates prospective relief only, has become moot. *See Monahan v. Nebraska,* 687 F.2d 1164, 1168 (8th Cir.1982). We ac-

have successfully challenged a proposed IEP under the Act. *Doe v. Anrig,* 692 F.2d 800, 809–12 (1st Cir.1982) (decided on the basis of § 615(e)(2) of the Act); *Miener v. Missouri,* 673 F.2d 969, 979–80 (8th Cir.1982) (same); *Anderson v. Thompson,* 658 F.2d 1205, 1209–14 (7th Cir.1981) (same, although recognizing that an award may be justified if "exceptional circumstances" are present; extensive review of the Act and its legislative history); *see Monahan v. Nebraska,* 687 F.2d 1164, 1169 (8th Cir.1982). *See also Zvi D. v. Ambach,* 694 F.2d 904, 907–08 & n. 8 (2d Cir.1982) (expressing no opinion on whether damages in the form of tuition reimbursement are ever appropriate under the Act); *Stacey G. v. Pasadena Independent School District,* 695 F.2d 949, 953 (5th Cir. 1983) (noting that the state must maintain only the financial commitment to continue to fund an educational placement it had already funded prior to the commencement of proceedings under the Act).

4. Taking this view, we need not decide whether Bobby's "then current educational placement," 20 U.S.C. § 1415(e)(3), at the time his parents requested tuition assistance was the Martinsville Christian School or the place reserved for him by the School System in its seventh-grade LD program as is argued by the School Board. *See Anderson v. Thompson,* 658 F.2d 1205, 1209 (7th Cir.1981).

cordingly vacate that portion of the district court's decision holding that the School System is "unable to provide an appropriate free education" to Bobby Rowe, and the prospective relief granted on that issue.

AFFIRMED IN PART; VACATED IN PART.