Charles BURGER, Charlene Burger,
and Wesley Charles Burger,
Plaintiffs,

v.

MURRAY COUNTY SCHOOL DISTRICT,
Micheal Elrod, Arnold Gray, Peggy
Dunn, William Hatton, Mickey Jones,
William Ross, Maynard Young, Individ-
ually and as Members of the Murray
County Board of Education, Defend-
ants.

Civ. A. No. C83–349R.

United States District Court,
N.D. Georgia,
Rome Division.

June 29, 1984.

Burt DeRieux, Eileen M. Crowley,
Greene, Buckley, DeRieux & Jones, Atlan-
ta, Ga., for plaintiffs.

Dean B. Donehoo, Chatsworth, Ga., F.
Gregory Melton, Timothy H. Allred, Dal-
ton, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

The narrow issue before the Court in this
action is which party should bear the bur-
den of proof in regard to the appropriate-
ness of defendant Murray County School
District's (the School District) proposal that
Wesley Charles Burger be removed from
the residential program at the Davison
School to a day program in the Murray
County School System. The Court finds
that the School District should bear the
burden of proof.

## BACKGROUND

Wesley Charles Burger is a thirteen year
old boy. He suffers from aphasia and as a
result qualifies to receive a free and appro-
priate public education (FAPE) pursuant to
the Education of All Handicapped Children
Act (EAHCA).[1] Although the record is not
entirely clear in this regard, it appears that
in 1976 the School District placed Wesley in
classes at the Dalton Child Development
Center. He remained there until sometime
in 1978. Wesley was next placed at the
United Cerebral Palsey School. However,
the United Cerebral Palsy School is a pre-

---

1. 20 U.S.C. § 1400 et seq.

school, so a year later Wesley was refused readmittance because of his age.

In 1979 the School District placed Wesley in the residential program at the Davison School in Atlanta. Wesley attended this school for the school years beginning in September of 1979, 1980, and 1981. During this time the School District paid for all of Wesley's costs associated with attending the Davison School.

In July, 1982 the School District, after reevaluating Wesley's Individual Education Program, (IEP) determined that Wesley should be removed from the Davison School and placed in a self-contained learning disabilities class in the Murray County School System. Wesley's parents objected to the new IEP and proposed placement.[2] Two administrative hearings were held.[3] Following the hearings Wesley's parents filed suit in this Court.

## DISCUSSION

■ The EAHCA is a funding statute that was enacted with the purpose of assisting the states in providing handicapped children with access to levels of education previously denied them. At the center of the EAHCA is the mandate that participating states provide handicapped children with a FAPE.[4] To meet this goal, an IEP must be developed for each child. The IEP has been described as "the educational blueprint that specifies how the child is to be taught, sets goals and determines how progress is to be measured." *Tatro v. State of Texas,* 703 F.2d 823 (5th Cir.1983). The EAHCA calls for joint participation by school officials, teachers, parents, and sometimes the child in formulating the IEP. 20 U.S.C. § 1401(19). However, de-

spite the statutorily recognized importance of involving parents in the development of the IEP, the primary responsibility for formulating IEPs rests with state and local educational agencies. *Hendrick Hudson District Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1981).

As previously stated, the Court is not presently concerned with the ultimate issue of whether Wesley should attend the Davison School or a special class in the Murray County School System. The question now before the Court is whether Wesley's parents must establish that the proposed IEP and change of placement are inappropriate or whether the School District has the burden of proving their propriety. Defendants advance several arguments in support of the position that plaintiffs should bear the burden of proof in this action. Defendants cite *Rowley* to show that the relevant inquiries before the Court are:

First, has the State complied with the procedures set forth in the Act?" And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Id.* at 206, 207, 102 S.Ct. at 3051. However defendant mistakenly states that the *Rowley* quote establishes that plaintiffs must prove the above. The *Rowley* Court, in this portion of the opinion, was delineating the parameters of a district court's review of EAHCA actions and in no way was

---

**2.** A proposed change in placement has explicitly been recognized as the type of fundamental change that triggers the requirements of 20 U.S.C. § 1415. *Tilton, By Richards v. Jefferson County Board of Education,* 705 F.2d 800 (6th Cir.1983) (involving transfer from regular school to special school).

**3.** See 20 U.S.C. § 1415(c). The parties disagree about the results of these hearings. The Court has not yet been furnished with a copy of the transcripts from these hearings and therefore

makes no judgment at this time concerning the findings of the hearing officers.

**4.** In the seminal EAHCA decision, *Hendrick Hudson District Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1981), the Supreme Court held that a state satisfies the FAPE requirement by "providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley* at 203, 102 S.Ct. at 3049.

suggesting how the burden of proof be allocated in regard to these questions.

Defendants next refer to the decision in *Bales v. Clark*, 523 F.Supp. 1366 (E.D.Va. 1981). In *Bales* the court did require that plaintiffs, the child's parents, bear the burden of proof. But *Bales* is factually distinguishable from this case. In *Bales*, the parents were the ones seeking to change the existing placement. Here it is the School District that wishes to change the status quo. Furthermore, the parents were seeking reimbursement for the costs attendant with a summer program that they had unilaterally placed their child in.[5] Therefore, *Bales* is not especially relevant to this action.

In addition, the Court does not find *Bales* to be persuasive from the standpoint of legal reasoning. The *Bales* opinion offered no authority whatsoever for placing the burden of proof on the plaintiffs. Also, the *Bales* court stated no reasons as to why it would be best to allocate the burden of proof as it did.[6] For example, there was no discussion of why placing the burden of proof on the parents on these facts would further the policies upon which the EAHCA is premised. On the facts before it the *Bales* court may have reached the correct decision regarding burden of proof, but this Court does not find *Bales* to be a good springboard on the issue of how the burden of proof should be allocated generally in EAHCA cases.[7]

Lastly defendants argue that in this instance it would be mistaken to place the burden of proof on them because they seek to change the status quo since they are the ones attempting to better "mainstream" Wesley. Clearly, an important purpose behind the EAHCA is to foster the educating of handicapped children in environments where they will have the opportunity to learn alongside with non-handicapped children. However the cases interpreting the EAHCA, from *Rowley* on down, make clear that while the goal of mainstreaming is to be achieved whenever possible, "congress recognized that regular classrooms would not be a suitable setting for the education of many handicapped children." *Hendrick Hudson District Board of Education v. Rowley*, 458 U.S. 176, 181 n. 4, 102 S.Ct. 3034, 3038 n. 4, 73 L.Ed.2d 690 (1981). *See also Colin K. By John K. v. Schmidt*, 715 F.2d 1, 7 n. 5 (1st Cir.1983). Therefore, mainstreaming, despite its importance, should only constitute one factor in many in regard to the development of an appropriate IEP. As such, the Court is not convinced that the party opposing mainstreaming should necessarily bear the burden of proof.

In addition, as the Court understands the record, defendant's argument regarding mainstreaming is somewhat misleading on these facts. Defendants want to place Wesley in a self-contained learning disabilities class. While the class might be located in a building in which non-handicapped children attend school, it would certainly not constitute a regular educational environment. Therefore, the Court fails to see how defendants can seriously argue that

---

**5.** The courts have uniformly held that parents who make unilateral changes or parents who make changes during the pendency of proceedings are not entitled to reimbursement for costs associated with those changes. *See e.g. Rowe v. Henry County School Board,* 718 F.2d 115 (4th Cir.1983).

**6.** In *Bales* the court relied heavily on the provisions of Va.Code § 22.1–213 *et seq.* (1980). Although this is not stated in the opinion, it is possible that one section in the Code specifically provides that plaintiffs will bear the burden of proof in EAHCA challenges. Other state codes do contain provisions allocating the burden of proof in these cases. *See e.g. Grimes v. Board of Education,* 3 EHLR 552:279 (1981).

**7.** The Court also notes that in *Georgia Association of Retarded Citizens v. McDaniel,* 716 F.2d 1565, 1576 (11th Cir.1983), the Eleventh Circuit Court of Appeals cited *Bales* as subscribing to the proposition that it was acceptable for a school district to adopt policies which inhibited consideration of the individual needs of children; a position emphatically rejected in *McDaniel.* While this rejection does not speak directly to the burden of proof issues, it does cast an aspersion on the overall soundness of the *Bales* decision.

they are attempting to mainstream Wesley.[8]

A canvass of the cases dealing with the burden of proof issue reveals that the burden has been imposed either upon the party seeking to change the status quo or upon the school district. The Court finds the former group of cases to be the most persuasive.[9] In *Lang v. Braintree School Committee*, 545 F.Supp. 1221 (D.Mass. 1982), the child, Margaret, had been attending classes in a special private school. The school district decided that she could obtain a FAPE at a Braintree public school. The parents opposed the move. Noting the preference in the EAHCA for "maintaining the status quo where the child is receiving an appropriate education," the court placed the burden of proof on the school district.[10] *Id.* at 1228. Likewise, in *Doe v. Brookline School Committee*, 722 F.2d 910, 919 (1st Cir.1983), the Court held that

> in view of the congressional preference for maintenance of current educational placement, a party that seeks to modify an existing educational placement, program or services must proceed by a motion for preliminary injunction. As with issues of funding interim placement, ... the party seeking a modification of the status quo should bear the burden of proof.

The Fifth Circuit has adopted a similar position. In *Tatro v. State of Texas*, 703 F.2d 823 (5th Cir.1983) (Tatro II), the court was faced with the question of whether a child's need for Clean Intermittant Catheterization (CIC) fell within the ambit of EAHCA. The school district was asserting that it did not, and if the child, who was currently attending special classes in a public school, required such care she should be moved to a residential setting or another institution providing CIC. The Court placed the burden of proof upon the school district stating that

> We are convinced that the central role of the IEP in the educational scheme contemplated by the EAHCA and in the standard of review developed in *Rowley* gives rise to a preumption in favor of the educational placement established by Amber's IEP. Moreover, because the IEP is jointly developed by the school district and the parents, fairness requires that the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate.

*Id.* at 830.[11]

The EAHCA was designed to offer handicapped children educational opportunities that had heretofore eluded them. Obvious advantages inhere to any child who is permitted to learn in a stable environment. This advantage may have even more meaning to the handicapped child. Therefore, when the suggestion is made that a child, who falls under the aegis of the EAHCA and is currently learning in what has been deemed to be an appropriate setting, be moved to a different facility, the party advocating the move should bear the burden of proving its propriety.

ACCORDINGLY, the School District should bear the burden of proof in regard to the proposed IEP involved in this action.

---

**8.** Children in special classes are not considered to be mainstreamed. 20 U.S.C. § 1412(5).

**9.** For a case holding simply that the burden rests with the school district see *Davis v. District of Columbia Board of Education*, 530 F.Supp. 1209 (D.D.1982). Unfortunately this opinion suffers from the same lack of analysis as *Bales.*

**10.** This was done despite the court's acknowledgement of the mainstreaming mandate.

**11.** The Fifth Circuit has also placed the burden on the school district due to the remedial nature of the Act and the parents' lack of knowledge. *S–1 v. Turlington*, 635 F.2d 342 (5th Cir.1981).