Adam LENHOFF, by his parents, Saul and Rochelle LENHOFF, Plaintiff,

v.

FARMINGTON PUBLIC SCHOOLS; Mary Lou Ankele, in her official capacity as Acting Superintendent of Farmington Public School District; and the State Board of Education, Defendants.

No. 87–CV–71807–DT.

United States District Court, E.D. Michigan, S.D.

March 2, 1988.

Patricia A. Stamler, Detroit, Mich., for plaintiff.

Paul J. Zimmer, Lansing, Mich., for defendant State Bd. of Educ.

J. Kingsley Cotton, III, Bloomfield Hills, Mich., for defendant Ankele and Farmington Schools.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

Before the Court are Motions for Summary Judgment filed by the Plaintiff and the Defendants Farmington Public Schools (FPS) and Mary Lou Ankele. The parties have responded and this matter is ripe for disposition.

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d

1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. 247, 106 S.Ct. at 2512.

## I. FACTS

The facts stated herein are a combination of Plaintiff's and Defendant FPS' briefs in support of their motions.

The Education for the Handicapped Act (EHA), 20 U.S.C. § 1401 *et seq.*, creates a comprehensive scheme assuring that handicapped children receive a "free appropriate public education." 20 U.S.C. § 1401. A "free appropriate public education" includes "special education" and "related services." No state or local educational agency may receive Federal funding unless it provides the handicapped with this opportunity. 20 U.S.C. § 1412(1). Federal regulations propounded pursuant to the EHA appear at 34 CFR § 300 *et seq.* The Michigan Mandatory Special Education Act (MMSEA), M.C.L.A. § 380.1701, *et seq.* and the Michigan Administrative Rules for Special Education, 1979 A.C. § 340.1701 *et seq.*, have been amended to conform to Federal requirements.

The genesis of the right to education for students with handicapping conditions began with the enactment of the EHA. 20 U.S.C. § 1401, *et seq.* Michigan enacted MMSEA to address the needs of students with handicaps. M.C.L.A. § 380.1701, *et seq.* The statutes require schools to provide each student with handicaps a free appropriate public education (hereafter FAPE) designed to meet their unique needs. 20 U.S.C. § 1401(18); 34 C.F.R. 300.4; and M.C.L.A. § 380.1701(a); 380.-1711(1)(a); 380.1751(1). (Program must "maximize potential").

An Individualized Education Program (IEP) must be developed for each handicapped child. It describes the educational needs of the child and the specially designed instruction and related services to be utilized in maintaining those needs. 20 U.S.C. § 1401(19). The IEP is developed at a meeting of the child's Individualized Educational Planning Committee (IEPC) along with the child's parents or other representatives. EHA also imposes detailed procedural requirements upon states receiving Federal funds in accordance with the provisions of the Act. A parent, school district or state department of education may initiate a due process hearing before an impartial hearing officer regarding the issues of identification, evaluation, special education program, educational placement of the person or the provision of special education programs and services. 1979 A.C. § 340.1724.[1] Any party aggrieved by the findings and decision of a local hearing officer may appeal to the Michigan State Department of Education which appoints a state level review officer. 1979 A.C. § 340.1725. After the reviewing officer makes his findings and reaches a decision, a party may seek review by bringing a civil action in any court of competent jurisdiction. 20 U.S.C. § 1415(b), 1415(e); 1979 A.C. § 340.1725a.

Plaintiff became a resident within Defendant FPS' district in 1979. During the school year of 1984 through 1985, Plaintiff attended seventh and eighth grade at O.E. Dunckel Middle School. He was a recipient of special education services under the identification of emotional impaired ("EI").

Beginning in November of 1984 and up to including May of 1985, Plaintiff exhibit-

---

**1.** The Michigan Special Education Rules were amended effective July 1, 1987. The Rules in effect for all relevant events in this action were amended August, 1982.

ed increasing severity of emotional problems; i.e., loud humming, disruptive comments, oppositional behavior, inappropriate sexual behavior and significant decline in academic achievement. Plaintiff's teacher made numerous contacts with Plaintiff's parents to discuss his increased behavioral problems in school. Also, Defendant FPS's assistant principal at Dunckel Middle School contacted Plaintiff's parents to discuss Plaintiff's behavioral problems. Ultimately, in April, 1985, Defendant FPS suspended Plaintiff.

In May of 1985, Defendant FPS convened an IEPC for Plaintiff. On May 30, 1985, Farmington completed Plaintiff's IEPC for his program's annual review. 1979 A.C. § 340.1722E(1). Each year, Farmington conducts individual IEPC meetings for each of its special education students. Also, an annual review IEPC is held. Further, every three years each student receives a comprehensive re-evaluation prior to his IEPC. 1979 A.C. § 340.1722d. Plaintiff's last three year re-evaluation was held in March of 1983. In May, 1985, Plaintiff's parents signed their approval to his annual review IEPC, indicating they participated in the IEPC, understood it and indicated their satisfaction. The IEP provided:

A.  Up to five hours of special education services comprising of: social work services; EI teacher consultant; and speech and language; and

B.  Up to 25 hours of regular education.

In September of 1985, Plaintiff began the eighth grade at O.E. Dunckel Middle School with the program prescribed in the May, 1985 IEPC. He was suspended for three days commencing October 9, 1985, for swearing in school. At that point, Plaintiff had been present in school only 17 days of the school year and had been absent eight days. Plaintiff's resource room teacher prepared a progress and performance report regarding Plaintiff. The report stated that Plaintiff continued to display inappropriate behavior patterns.

Plaintiff was scheduled to return to school on October 14, 1985. However, on that date, Plaintiff was hospitalized at Kingswood Hospital for a suicide attempt.

Plaintiff never returned to O.E. Dunckel Middle School. Instead, Plaintiff's parents consulted with Dr. Barry Tigay, Plaintiff's treating psychologist, Ms. Marilyn Wineman, MSW, ACSW, child placement consultant, and Dr. Pasternak, Plaintiff's psychiatrist at Kingswood Hospital, to discuss the appropriate program and placement for Plaintiff. They recommended that Plaintiff be placed in a year round private residential placement with a highly structured environment, and with appropriate related services to meet Plaintiff's unique needs.

Consequently, on October 15, 1985, Plaintiff's parents applied for Plaintiff's admission to Devereux Foundation. Devereux is an educational and therapeutic residential facility located in Devon, Pennsylvania. Plaintiff was originally admitted in the Brook–Brier Program at Devereux but he has been transferred to the Manor High School Program of the Devereux Foundation's Boyd Campus, located in Devon, Pennsylvania. On November 4, 1985, Plaintiff's parents unilaterally placed him in the Devereux Foundation. There is no dispute that school authorities were not consulted regarding this placement, nor was an IEPC requested to discuss a change in Plaintiff's educational plan. The school authorities assert that they did not learn of this placement at Devereux Foundation until an IEPC was convened at the parents' request on November 20, 1985. The parents' request for the November 20, 1985 IEPC came *after* Plaintiff was placed in Devereux and *before* the school district could evaluate Plaintiff for a possible change in program.

At the November 20, 1985 IEPC, Plaintiff's parents announced that Plaintiff had been placed in the Pennsylvania school. They charged the school district with failing to provide a proper education for Plaintiff and further asked the school district to pay the cost of Devereux, $36,000 per year. They said he required placement in a 24–hour residential facility and that only Devereux met his needs. The IEPC was adjourned so Plaintiff's parents could submit

data regarding Plaintiff's condition. The IEPC was set for reconvening on a number of dates, but each date was postponed because the data had not been supplied to the school officials.

Plaintiff asserts that on or about December 18, 1985, Defendant Ankele, on behalf of Defendant FPS, received the following records from Devereux: (1) psychological evaluation, (2) achievement testing, and (3) physical exam. Additionally, prior to the reconvened IEPC meeting of February 13, 1986, Defendant FPS's staff of Ms. Aldrich, Mr. Daoust, Mr. Miner, and Mr. Skowronski, met and prepared a Multidisciplinary Evaluation Team report for Plaintiff.

In February of 1986, Plaintiff's parents informed the school district that they could wait no longer for additional data to be sent and requested an IEPC be convened on February 13, 1986. Defendant Ankele arrived at the IEPC meeting with a completed IEP form. Additionally, Plaintiff's parents submitted additional documentation to Defendants FPS and Ankele: (1) 12/6/85 letter of Dr. Barry Tigay, (2) 12/8/85 letter of Ms. Marilyn Wineman, (3) 12/10/85 letter of Dr. Pasternak, (4) IEP from Devereux, (5) 1/27/86 letter of Dr. Tirso Vinnenza, (6) 10/4/85 psychological evaluation of Plaintiff, by Oakland Psychological Clinic, (7) medical records from Kingswood Hospital, and (8) the November 4, 1985 Devereux Foundation Admission Psychological Evaluation.

Defendant FPS also received information from a Multidisciplinary Evaluation Team (MET). The MET convened on February 10, 1986 to evaluate Plaintiff. 1979 A.C. § 340.1701A(e); § 340.1721a *et seq.* Even though Plaintiff was not available to evaluate, the MET made the following recommendations:

Based on the additional information presented, Adam still continues to meet eligibility for special education services. However, given the brief exposure of professional staff to Adam at the beginning of this year, his removal from the school setting at the time new behaviors were surfacing and his absence from the school for the past four months, the addi-

tional information we have is not sufficient for us to conclude that a change in his educational plan is appropriate. Had Adam remained in the Farmington Schools and these behaviors persisted or worsened, our recommendations might have been different. Should Adam return to Farmington Schools, assessment of his emotional status would be encouraged prior to school re-entry.

At the February 13, 1986 IEPC meeting, Defendant Ankele, on behalf of Defendant FPS, decided that Plaintiff's IEP of May 30, 1985, would remain in effect. Plaintiff alleges that his parents requested Defendants FPS and Ankele to evaluate Plaintiff prior to concluding the IEPC, but that Defendant FPS by Defendant Ankele refused their request. Defendants deny that they refused to evaluate the Plaintiff.

On February 17, 1986, Plaintiff's parents filed a request for a due process hearing pursuant to 1979 A.C. § 340.1724. Prior to the hearing, Defendant FPS requested an opportunity to evaluate Plaintiff in person. On April 21, 1986, Defendant FPS moved to adjourn the due process hearing and compel production of Plaintiff for evaluation and IEPC or, in the alternative, to dismiss the hearing.

On July 15, 1986, the Local Hearing Officer granted Defendant FPS's motion to dismiss. The decision held, *inter alia*, that Plaintiff was not a resident of Michigan, and thus lacked standing to proceed to a due process hearing. Plaintiff then filed an appeal for a State Level Hearing Review on July 18, 1986. On September 3, 1986, the State Level Hearing Review Officer reversed the decision of the hearing officer and required that a hearing be conducted on the merits.

On October 2, 1986, Defendants renewed their motion to compel evaluation of the Plaintiff. The local hearing officer granted Defendant's motion stating:

When the Lenhoffs placed Adam beyond reach of the Farmington Public Schools before requesting the schools to make a placement, they created a situation which deprived the Farmington Public Schools of the information it would customarily

have had.... Obviously, without that information, the schools would be essentially blindfolded throughout the proceedings.... It would be a manifest injustice, seriously flawing the proceedings, to allow this situation to continue.

Plaintiff was ordered to submit to an evaluation. Plaintiff appealed to the state review officer who affirmed and, on November 20, 1986, Plaintiff was ordered to be evaluated and that the Defendant FPS formulate an IEP for Plaintiff.

Thereafter, Plaintiff filed this lawsuit. Count I of Plaintiff's Complaint alleges that the November 20, 1986 decision improperly compels Plaintiff to be evaluated, orders a new IEPC rather than remanding the matter for a determination of the February, 1985 IEP, and limits Plaintiff's rights to submit and attack evidence at the IEPC hearing. Plaintiff asserts that this violates his rights under 20 U.S.C. § 1411 *et seq.*, 34 C.F.R. § 300.346, 20 U.S.C. § 1415 *et seq.*, 34 C.F.R. § 300.508, M.C. L.A. § 380.1701 *et seq.*, 1979 A.C. § 340.1724b *et seq.*, and 1979 A.C. 340.-1721e *et seq.* Count II of Plaintiff's verified complaint alleges that Defendants have violated 29 U.S.C. § 794, by discriminating against Plaintiff, an alleged handicapped individual, in requiring him to be re-evaluated.

The Court will now address the motions concurrently.

## II. COMPELLED EVALUATIONS

Plaintiff asserts that it is entitled to summary judgment because, although the Defendants are entitled to evaluation of Plaintiff, they waived their right to an evaluation. Plaintiff claims that at the February 13, 1986 IEPC meeting the Defendants refused to accept Plaintiff's parents' request to evaluate Plaintiff at Devereux. Plaintiff further argues that despite Plaintiff's continued emotional deterioration, the Defendants did not request an evaluation of the Plaintiff. Plaintiff states that Defendants' requests for Plaintiff to submit to an evaluation in response to Plaintiff's initial filing of the due process hearing is untimely and thus waived.

Defendants respond by filing the affidavit of Defendant Ankele. Her affidavit states: "At no time did I represent to [Plaintiff's parents] that Farmington did not need additional evaluations in order to complete the IEPC or that its MET did not need to evaluate [Plaintiff]." Defendants further contend that there is no waiver since they are not required to leave the state to evaluate the Plaintiff.

■ Although there is a factual dispute as to whether the Defendant waived its opportunity to evaluate the Plaintiff, the Court finds that this is immaterial. It is undisputed that the Plaintiff was in another State when Plaintiff's parents offered Plaintiff for evaluation. The law in these proceedings is clear. If either the parents or the school district disagree with the IEP developed by the planning committee, or if a dispute arises as to the district's proposal or refusal to change the identification, evaluation, or educational placement of the child, they are entitled to an impartial due process hearing. 20 U.S.C. § 1415(b)(2); 34 C.F.R. § 300.506(a). Any party aggrieved by the findings and decisions rendered in this hearing is entitled to an impartial review of such hearing by a state-level reviewing official appointed by the state educational agency. 20 U.S.C. § 1415(c); 34 C.F.R. § 300.510. Any party aggrieved by the review decision may then bring a civil action in any state court of competent jurisdiction or in a district court of the United States. 20 U.S.C. § 1415(e)(2); 34 C.F.R. § 300.511. During the pendency of any of these due process proceedings, the student is to remain in their current educational placement. 20 U.S.C. § 1415(e)(3); 34 C.F. R. § 513.

■ Defendants are under no duty to leave the state to conduct an evaluation of a student unilaterally removed from the school district without the prior knowledge or acquiescence of school officials. Otherwise, parents could effectively impede the evaluation process by removing students to areas where it would be economically infeasible for a district to conduct an evaluation. To hold otherwise would violate a

school district's right to conduct an evaluation.

Therefore, based on the above, the Court hereby GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## III. DUE PROCESS

Plaintiff asserts that the state level decision violates his due process rights under 20 U.S.C. § 1415(b)(2); 34 C.F.R. § 300.506(a); 1979 A.C. §§ 340.1724(1), 340.1722a(1), and 340.1725b(2). The state level decision ordered Defendants to "complete all evaluation activities required to formulate an Individualized Education Program for Adam Lenhoff." Plaintiff contends that this holding denies Plaintiff a right to a full hearing and ignores the fact that Plaintiff had an IEP as of February 13, 1986.

Plaintiff is appealing the February 13, 1986 IEP report. However, that report was made without the benefit of the Defendants evaluating the Plaintiff. Plaintiff, who apparently was not in this State after November of 1985, contends that only the Devereux evaluations he supplied to the Defendants should be considered. The Court does not find support for this claim. The hearing officer determined that Defendants were entitled to an evaluation of the Plaintiff. The record of the matter before the hearing officer does not indicate that the matter was tried on the *merits* of the February 13, 1986 IEP, but only that Defendants were entitled to an evaluation of the Plaintiff *prior* to the determination of a new IEP.

Plaintiff contends that the state levels' November 25, 1986 decision ordering a new IEPC precludes them from challenging the February 13, 1986 IEP. However, it appears to the Court that Defendants have not bound themselves to the February 13, 1985 IEP until there is an evaluation of the Plaintiff. Defendants have argued that they have requested an evaluation of the Plaintiff before a final decision, but Plaintiff has refused to return to the State. See *Foster v. District of Columbia Bd. of Education,* 523 F.Supp. 1142 (D.D.C.1981) (Par-

ents unilateral removal of learning disabled child from one school to another before resorting to a due process hearing procedures barred suit for tuition reimbursement).

Based on the above, Plaintiff's motion for summary judgment on the claim that the state level decision violates Plaintiff's due process rights is DENIED and Defendants' Motion for Summary Judgment is GRANTED.

## IV. BURDEN OF PROOF

Plaintiff claims that it is the Defendants that have the burden of proving that it is providing a free, appropriate public education. Plaintiff claims that the state level hearing officer's decision improperly placed the burden on the Plaintiff:

> "In the opinion of this review officer, the party recommending the more restrictive of two possible educational placements should bear the responsibility for carrying the burden of proof forward and justifying placement."

Page 3 of Exhibit F attached to Defendants' Response to Plaintiff's Motion for Summary Judgment.

Plaintiff relies on *Davis v. District of Columbia Bd. of Education,* 530 F.Supp. 1209, 1211–1212 (D.D.C.1982), which states:

> The Hearing Officer's role is not to hear all proposals from the school district, or the parents, and consider any of his own, choose the most appropriate one, and then determine who should bear financial responsibility. Instead, the only proposal which is properly before the Hearing Officer is that made by the school district. It is the school district's burden of proof to show that its proposal is indeed an appropriate one....

> \*     \*     \*     \*     \*     \*

> This is not new law created by this Court, but rather is the placement process mandated by the Education for Handicapped Children Act of 1975.

Other cases support this proposition. *Grymes v. Madden,* 672 F.2d 321 (3rd Cir. 1982); *Lang v. Braintree School Committee,* 545 F.Supp. 1221 (D.C.Me.1982). How-

ever, as Defendants argue, other courts have held that the party seeking to change the educational placement of a handicapped student has the burden of proving the propriety of the proposed new plan. *Doe v. Brookline,* 722 F.2d 910 (1st Cir.1983); *Burger v. Murray County School Committee,* 612 F.Supp. 434 (N.D.Ga.1984); *Bales v. Clarke,* 523 F.Supp. 1366 (E.D.Va. 1981).

In the matter below, the state level review decision never addressed the merits of Plaintiff's placement. Instead, the decision stated that Plaintiff must undergo an evaluation and then a new IEPC must be conducted. The issue of the propriety of the February 13, 1985 IEP was not determined by the state level hearing officer since the matter was decided on a pretrial motion. The state level review's decision merely sets forth the procedures to be conducted when this matter comes forward on the new IEPC.

The Court finds that it cannot rule on Plaintiff's request since it would be an advisory opinion. Plaintiff has not been denied any procedural due process rights. Further, there is no indication that the new IEPC would be disfavorable to Plaintiff's position. Thus, Plaintiff is requesting the Court to rule on a matter that may not occur. Since Article III of the United States Constitution prohibits this Court from addressing advisory matters, Plaintiff's motion for summary judgment on the improper placement of the burden of proof must be DENIED. Consequently, the Court hereby DISMISSES Plaintiff's claim that an improper burden of proof has been placed on him.

## V. DEFENDANT STATE BOARD OF EDUCATION

Plaintiff asserts that the Defendant State Board of Education ("Board") has the obligation to ensure that Plaintiff receives his procedural safeguards. Plaintiff thereafter claims that Defendant Board has failed to comply with mandated duties. See *Woolcott v. State Bd. of Education,* 134 Mich.App. 555, 351 N.W.2d 601 (1984). There is, however, no evidence that the Defendant Board has failed to comply with any duties. Therefore, Plaintiff's motion for summary judgment as to the Defendant Board is DENIED.

## VI. 29 U.S.C. § 794

Plaintiff asserts that the Defendants violated Section 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 794. This statute provides:

> No otherwise qualified handicapped individual in the United States, as defined in Section 706(8) shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance....

29 U.S.C. § 794 (West 1987). To establish a claim under this Act, Plaintiff must establish:

(1) that he is a handicapped person under the Rehabilitation Act;

(2) he is otherwise qualified for the program;

(3) he is excluded from benefits solely because of his handicap; and

(4) that the program receives federal funding.

*Joyner v. Dumpson,* 712 F.2d 770, 774 (2nd Cir.1983). An individual with handicaps is defined under the Act as follows:

> (8)(A) Except as otherwise provided in subparagraph (B), the term "individual with handicaps" means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to subchapters I and III of this chapter.

> (B) Subject to the second sentence of this subparagraph, the term "individual with handicaps" means, for purposes of subchapters IV and V of this chapter, any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having

such an impairment. For purposes of sections 793 and 794 of this title as such sections relate to employment, such term does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(8) (West Supp.1987). Plaintiff has not submitted any evidence which supports his claim that he is handicapped under 29 U.S.C. § 706(8). Therefore, Plaintiff's motion for summary judgment on his claim that the Defendants violated § 504 of the Rehabilitation Act is DENIED.

## VIII. CONCLUSION

The Court is not insensitive to the needs of the Plaintiff in this matter. Based on all of the evidence presented in this matter, it is agreed between the parties that Plaintiff is in need of special educational assistance, and, he should receive it. Neither party disagrees. However, there are procedures which must be followed which would compel the school district to facilitate those needs. Very simply, these procedures were overlooked. Possibly, after the Defendants conduct an evaluation, the IEP would recommend that Plaintiff be placed at a facility such as Devereux. The Court cannot say, nor will it address this issue since that determination is not before this Court. Accordingly:

Plaintiff's motion for summary judgment is DENIED. Defendants FPS' and Ankele's motion for summary judgment is GRANTED.

IT IS SO ORDERED.