## KOONTZ v AMERITECH SERVICES, INC

Docket No. 208176. Submitted September 7, 1999, at Grand Rapids. Decided December 7, 1999, at 9:15 A.M. Leave to appeal sought.

Nancy Koontz applied for unemployment benefits from the Unemployment Agency, Department of Consumer and Industry Services, after losing her job at Ameritech Services, Inc., and rolling over into an Individual Retirement Account (IRA) a lump-sum distribution of her employer-funded Ameritech pension. The Unemployment Agency, relying on MCL 421.27(f); MSA 17.529(f), determined that Koontz' weekly unemployment benefits must be reduced by the prorated weekly retirement benefit she would have received had she opted for a monthly retirement annuity instead of the lump-sum rollover into an IRA. A hearing referee determined that Koontz' unemployment benefits were not subject to coordination with the pension distribution. The Michigan Employment Security Board of Review, reversing the hearing referee's decision, decided that Koontz' unemployment benefits were subject to coordination with the pension distribution. The Grand Traverse Circuit Court, Philip E. Rodgers, Jr., J., affirmed the decision of the board of review. Koontz appealed to the Court of Appeals by leave granted.

The Court of Appeals *held*:

MCL 421.27(f)(5); MSA 17.529(f)(5) provides that weekly unemployment compensation for any week that begins after March 31, 1980, shall be reduced, but not to below zero, by the prorated weekly amount of a governmental or other pension received by the unemployment compensation claimant only if such reduction is required as a condition for full tax credit against the tax imposed by the Federal Unemployment Tax Act (FUTA), chapter 23 of Subtitle C of the Internal Revenue Code, 26 USC 3301 to 3311. The United States Department of Labor, in Unemployment Insurance Program Letter No. 22-87, change 1 (June 19, 1995), has advised that the FUTA does not require reduction of unemployment compensation where, as in this case, pensions are rolled over into an IRA. Accordingly, Koontz' unemployment benefits are not subject to coordination with her pension distribution.

Reversed.

UNEMPLOYMENT COMPENSATION — COORDINATION WITH PENSIONS — INDIVIDUAL RETIREMENT ACCOUNT ROLLOVERS.

The weekly unemployment compensation benefits of a claimant who, upon termination of employment, rolls over into an Individual Retirement Account a lump-sum distribution of an employer-funded pension are not subject to coordination with the pension distribution (MCL 421.27[f][5]; MSA 17.529[f][5]).

*David Davidson,* for Nancy Koontz.

*Albert Calille,* for Ameritech Services, Inc.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Errol R. Dargin,* Assistant Attorney General, for the Unemployment Agency.

Amicus Curiae:

*Richard W. McHugh* and *Daniel W. Sherrick* and *Phillip L. Gilliam,* for International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW).

Before: MCDONALD, P.J., and NEFF and SMOLENSKI, JJ.

PER CURIAM. Plaintiff appeals by leave granted an order of the circuit court affirming a Michigan Employment Security Board of Review decision that plaintiff's weekly unemployment benefit rate was subject to reduction as a result of a lump-sum pension distribution, which plaintiff directly rolled over into an Individual Retirement Account (IRA). We reverse.

I

Plaintiff was employed with defendant Ameritech Services, Inc., in its Traverse City office from 1965 to August 1995, when defendant permanently closed the office. Upon separation from employment, plaintiff

had the option of electing either a monthly annuity or a lump-sum distribution of her company-funded pension. Because she was only forty-eight years old and not ready to retire,[1] plaintiff opted for the lump-sum distribution of $185,711.55, which Ameritech transferred directly into an IRA.

When plaintiff applied for unemployment benefits in August 1995, the Unemployment Agency[2] (UA) issued a determination that plaintiff's unemployment benefits must be coordinated with her company-funded pension pursuant to the coordination provisions of the Michigan Employment Security Act (MESA), MCL 421.27(f)(5); MSA 17.529(f)(5). According to the UA determination, plaintiff's unemployment compensation would be reduced weekly by $243, the prorated weekly retirement benefit plaintiff would have received had she opted for a monthly retirement annuity upon her involuntary termination from Ameritech.

Plaintiff requested a redetermination of her unemployment benefits, and the UA affirmed its decision. Plaintiff appealed the redetermination. Following a hearing, the referee determined that plaintiff's unemployment benefits were not subject to coordination with her lump-sum pension distribution because plaintiff had not "received" the payment as intended under the statutory language requiring coordination. Ameritech appealed to the Michigan Employment

---

[1] Plaintiff apparently was not eligible to retire under the Ameritech Pension Plan, given her age and years of service; however, Ameritech offered a "3 + 3" early retirement incentive program, which added three years to plaintiff's age and term of employment to calculate her pension.

[2] The Unemployment Agency was formerly known as the Michigan Employment Security Commission (MESC).

Security Board of Review, which issued a two-to-one decision reversing the referee's decision and again determining that plaintiff's unemployment benefits must be reduced in light of her pension rollover. Plaintiff appealed the decision to the circuit court, which affirmed the UA determination that coordination was required.

II

This case presents an issue of first impression: Whether subsection 27(f) of the MESA, MCL 421.27(f); MSA 17.529(f), requires that plaintiff's weekly unemployment compensation be coordinated with her lump-sum retirement benefit, which was directly rolled over into an IRA after her involuntary termination of employment due to Ameritech's office closure.[3] This Court reviews questions of law, including statutory interpretation, de novo; however, we ordinarily defer to the construction of a statute by the agency charged with its interpretation, unless the interpretation is clearly wrong. *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998). We conclude that the board of review's interpretation of subsection 27(f) is clearly wrong, given the legislative intent underlying the statute and the provisions regarding coordination.

III

Subsection 27(f) of the MESA provides for the coordination of unemployment compensation and retire-

---

[3] In her brief on appeal, plaintiff presents as separate issues the questions whether coordination is required under either subsection 27(f)(5) or subsection 27(f)(1). We consolidate these considerations for purposes of our discussion.

ment benefits. For purposes of our analysis, we set forth the applicable statutory provisions. Subdivision 27(f)(1) provides generally:

> For benefit years beginning before the conversion date prescribed in section 75, and notwithstanding any inconsistent provisions of this act, the weekly benefit rate of each individual who is receiving or will receive a "retirement benefit", as defined in subdivision (4), shall be adjusted as provided in subparagraphs (a), (b), and (c). However, an individual's extended benefit account and an individual's weekly extended benefit rate under section 64 shall be established without reduction under this subsection unless subdivision (5) is in effect. Except as otherwise provided in this subsection, all other provisions of this act continue to apply in connection with the benefit claims of those retired persons.

Subparagraph a, which the board of review found applicable to plaintiff, sets forth the adjustment applicable if a claimant's retirement benefit is equal to or greater than the corresponding unemployment benefit rate:

> If and to the extent that unemployment benefits payable under this act would be chargeable to an employer who has contributed to the financing of a retirement plan under which the claimant is receiving or will receive a retirement benefit yielding a pro rata weekly amount equal to or larger than the claimant's weekly benefit rate as otherwise established under this act, the claimant shall not receive unemployment benefits that would be chargeable to the employer under this act.

Subdivision 4 defines "retirement benefit" for purposes of subdivision 1:

> (a) As used in this subdivision, "retirement benefit" means a benefit, annuity, or pension of any type . . . that is:

(i) Provided as an incident of employment under an established retirement plan, policy, or agreement, including federal social security if subdivision (5) is in effect.

(ii) Payable to an individual because the individual has qualified on the basis of attained age, length of service, or disability, whether or not the individual retired or was retired from employment. Amounts paid to individuals in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved shall not be considered to be retirement benefits.

Subdivision 5 provides for a reduction in unemployment compensation where required by the Federal Unemployment Tax Act, 26 USC 3301 *et seq.* (FUTA) to ensure compliance with federal requirements related to unemployment insurance:[4]

Notwithstanding any other provision of this subsection, for any week that begins after March 31, 1980, and with respect to which an individual is receiving a governmental or other pension and claiming unemployment compensation, the weekly benefit amount payable to the individual for those weeks shall be reduced, but not below zero, by the entire prorated weekly amount of any governmental or other pension, retirement or retired pay, annuity, or any other similar payment that is based on any previous work of the individual. This reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act, chapter 23

---

[4] Subdivision 5 was enacted in 1980 to bring Michigan into compliance with federal requirements to reduce unemployment compensation by the amount of a claimant's pension benefits, where a claimant was receiving both benefits. 1980 PA 231; House Legislative Analysis, HB 5632, April 23, 1980. In order for Michigan to continue receiving federal administrative funds and unemployment tax credits, the state was required to conform with federal law as of March 31, 1980. *Id.* However, the reduction would take effect only if required for employers to receive tax credits under federal law. *Id.*

of subtitle C of the internal revenue code of 1986, 26 U.S.C. 3301 to 3311.

IV

In this case, the statutory provisions for coordination under subdivision 27(f)(1) and subdivision 27(f)(5) have resulted in inconsistent interpretations and application of the MESA coordination provisions. In its initial determination, the UA denied plaintiff unemployment compensation benefits pursuant to subdivision 27(f)(5).[5] The referee reversed the UA determination, concluding that plaintiff's weekly benefit rate was not subject to reduction under subdivision 27(f)(5) or under f(1).[6] The board of review

---

[5] The UA determination stated:

> Based on multi unit decision, a lump sum payment, which you had the choice of taking, must be pro-rated based upon the monthly amount of $1052.95 you would have received had you elected to take it under section 27(f)(5). Therefore, any benefit paid on wages with Ameritech will be reduced weekly by $243.00.

[6] The referee noted that the MESC (UA) had issued an agency interpretation, MESC Revised Benefit Interpretation No. 20.641 (November 29, 1995), clarifying that pensions rolled over into an IRA were not subject to the pension reduction provisions of subsection 27(f). The interpretation provided, in relevant part:

> *Question:* If an employee elects to roll over the retirement accruals into an IRA, what will be the effect on the worker's entitlement to unemployment benefits?
>
> *Answer:* An employee who rolls over a pension or other cash reserve into an IRA incurs no liability at that time for income taxes under the Internal Revenue Code (i.e. [, the] IRS does not treat the payment as having been "received" for income tax purposes), as long as the transfer of the pension amount to the IRA occurs within 60 days of the worker's receipt of the pension amount. Similarly, the amount of the pension will *not* be considered received for purposes of the pension reduction provision, Section 27(f), of the Michigan Employment Security Act. The amount of the pension rolled over into an IRA will therefore *not* be used to reduce unemployment benefits.

reversed, in a split decision, finding that plaintiff's benefit rate was subject to reduction under subdivision 27(f)(1) and that subdivision 27(f)(5) applied only to extended benefits and, therefore, was inapplicable to plaintiff.[7]

We disagree and find that subdivision 27(f)(5) governs the coordination of benefits in plaintiff's situation, and accordingly, plaintiff's weekly benefit rate is not subject to reduction. We also conclude that plaintiff's rolled-over retirement benefits do not result in a reduction of her benefit rate, even under the provisions of subdivision 27(f)(1).

A

If reasonable minds can differ with respect to the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). The court should apply a reasonable construction to best accomplish the Legislature's purpose. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

B

Given the legislative history of subsection 27(f) and the statutory language, we conclude that subdivision

---

[7] The dissenting board member found the referee's decision in conformity with the law and the facts in this case, stating that plaintiff did not "actually receive any retirement benefits when she separated" and the rollover did not amount to a constructive receipt.

27(f)(5), rather than subdivision 27(f)(1), governs whether plaintiff's unemployment compensation is subject to reduction. Subdivision 27(f)(5) was added to subsection 27(f) in 1980 in hurried legislative action[8] to ensure Michigan conformed with federal law, which conditioned federal certification of a state's unemployment compensation laws on the state's adoption of a provision that

> the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week. [*Gormley v General Motors Corp*, 125 Mich App 781, 785-786, 336 NW2d 873 (1983) (citations omitted).]

The federal law was enacted to create uniformity among the states with regard to the coordination of retirement benefits and unemployment compensation. *Id.* at 785; Hildebrand, *Federal Law Requirements for the Federal-State Unemployment Compensation System: Interpretation and Application*, 29 U Mich J L Ref 527, 556 (1996). To comply with the federal law, the Legislature merely added the federally required provision to subsection 27(f), as subdivision 27(f)(5),

---

[8] See n 4, *supra*. If Michigan were found out of conformity with federal law, the state stood to lose $78 million in federal administrative funds and Michigan employers could have been liable for an additional $450 million in federal taxes; thus, it was critical that the Legislature enact subdivision 27(f)(5) before the impending federal certification. House Legislative Analysis, HB 5632, April 23, 1980.

which to a certain extent duplicated existing statutory provisions for coordination of retirement benefits under subdivision 27(f)(1). See House Legislative Analysis, HB 5632, April 23, 1980.

We conclude that subdivision 27(f)(5) is controlling with regard to the coordination of plaintiff's retirement benefits. Its purpose was to conform with the federal government's goal of maintaining certain uniformity among the state programs regarding the coordination requirements for unemployment compensation, which purpose would be defeated were Michigan to default to its own interpretations for coordination under its previous statutory provisions and, in this case, circumvent the clear result under subdivision 27(f)(5) that coordination of plaintiff's benefits is not required.

Moreover, the express statutory language mandates a conclusion that subdivision 27(f)(5) controls over subdivision 27(f)(1). Subdivision f(5) was enacted after f(1) and provides: "Notwithstanding any other provision of this *subsection* . . ." (emphasis added). To apply subdivision 27(f)(1)˙ independently of subdivision 27(f)(5) and deny plaintiff unemployment benefits is inconsistent with the result under federal law. Such an interpretation also creates an inconsistency within the statute, contrary to the rules of statutory construction. In construing statutes, seeming inconsistencies in the various provisions should be reconciled if possible. *Gross v General Motors Corp*, 448 Mich 147, 164; 528 NW2d 707 (1995).

Although the board of review concluded that subdivision 27(f)(5) applies only to extended benefits, and, therefore, does not apply to plaintiff, we find no basis in the statute for this conclusion. There is no limiting

language in subsection 27(f) to indicate that subdivision 27(f)(5) applies only to extended benefits.[9] Further, the board of review's interpretation is contrary to the legislative history underlying both the federal law and subdivision 27(f)(5), which does not reference "extended benefits." The legislative analysis indicates that subdivision 27(f)(5) "would amend MESA to provide that, after March 31, 1980, anyone receiving unemployment compensation in a week in which he or she was also receiving pension benefits would have his or her unemployment benefit amount reduced . . . ." House Legislative Analysis, HB 5632, April 23, 1980.

Subdivision 27(f)(5) expressly provides "[t]his reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act [FUTA], chapter 23 of subtitle C of the internal revenue code of 1986, 26 U.S.C. 3301 to 3311." United States Department of Labor (USDOL) guidance for the FUTA provides that the FUTA does not require a reduction where pension benefits are rolled over into an IRA, as plaintiff did in this case.[10] USDOL Unemployment Insurance Program Letter No. 22-87, Change 1 (June 19, 1995).

---

[9] We also note that the UA itself could not have had this understanding because plaintiff's benefits were specifically denied under subdivision 27(f)(5).

[10] USDOL Unemployment Insurance Program Letter No. 22-87, Change 1, provides in relevant part:

> Section 402(c), IRC, provides for the transfer of "eligible rollover distributions" from a "qualified trust" to an "eligible retirement plan." . . . If all the requirements of Section 402, IRC, are met, including that the transfer of the payment is made within 60 days of receipt by the individual, then the payments will not be included in gross income for Federal income tax purposes.

Plaintiff was involuntarily terminated from her employment. She had no choice upon separation but to take her retirement funds accumulated in Ameritech's pension fund. She requested the funds be directly rolled over into an IRA, in a lump sum, because she was not ready to retire. Accordingly, plaintiff did not receive her retirement funds. Her weekly unemployment compensation is not subject to reduction under the FUTA, and subdivision 27(f)(5) applies to exempt plaintiff's pension benefit from coordination.

C

Even were we to find the coordination of plaintiff's benefits governed by subdivision 27(f)(1), we would be compelled to conclude that her benefits were not subject to coordination under the circumstances of this case.

The board of review concluded that a prorated amount of the funds plaintiff paid into the IRA must be offset against her weekly unemployment benefit rate pursuant to subparagraph 27(f)(1)(a) because plaintiff "received" her pension. We find this reading of the statute clearly wrong.

---

*Effect of Rollovers.* If a rollover from a qualified trust into an eligible retirement plan is not subject to Federal income tax, then it is not considered to be "received" by the individual for purposes of Section 3304(a)(15), FUTA. A non-taxable rollover does not represent a payment to the individual for purposes of retirement. Instead, it merely effectuates a change with respect to the retirement plan under which the amounts are maintained. Therefore, it is not considered to be "received" and States are not required to reduce UC due to such rollovers.

1

Under the express language of the statute, subdivision 27(f)(1) requires an offset of pension benefits if an individual "is receiving or will receive a 'retirement benefit', as defined in subdivision (4)." Under the definition of "retirement benefit" in subdivision 4, "[a]mounts paid to individuals in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved shall *not* be considered to be retirement benefits." MCL 421.27(f)(4)(a)(ii); MSA 17.529(f)(4)(a)(ii) (emphasis added).

In this case, plaintiff's pension is not considered a retirement benefit for purposes of subdivision 27(f)(1) because it was liquidated upon plaintiff's involuntary termination when Ameritech closed its Traverse City office. Upon her separation from employment with Ameritech, plaintiff had no choice but to take the distribution of her retirement fund, as either a monthly or a lump-sum payment.[11] The statute clearly excludes a pension distribution from coordination under these circumstances.

2

Even if plaintiff's distribution were considered a retirement benefit, i.e., disregarding the express language in subparagraph 27(f)(4)(a)(ii), we conclude that plaintiff's IRA fund would be exempt from co-

---

[11] Because of her age, plaintiff faced substantial tax penalties for early withdrawal of her retirement money. Plaintiff's only logical choice was to leave her retirement money in a tax-qualified retirement fund by transferring the money from Ameritech's Pension Plan to an IRA.

ordination. Given the language of subparagraph 27(f)(4)(a)(ii), exempting from coordination retirement payments because of the closure of a business department, we conclude that the Legislature did not intend the terms "receive or will receive" under subdivision 27(f)(1) to include the direct rollover of a pension fund to an IRA by a worker forced into involuntary termination because of an office closure.

This construction of the statute is the most reasonable and comports with the benefit interpretations of both the UA and the USDOL. MESC Revised Benefit Interpretation No. 20.641 (November 29, 1995); USDOL Unemployment Insurance Program Letter No. 22-87, Change 1 (June 19, 1995). In reaching our conclusion, we are mindful that the role of the judiciary is not to engage in judicial legislation, but rather to determine the way chosen by the Legislature. *Tyler v Livonia Public Schools*, 459 Mich 382, 393, n 10; 590 NW2d 560 (1999). We decline to interpret the statute to incorporate any change that overrides requirements clearly adopted by the Legislature.

V

On appeal, plaintiff further contends that she was denied her right to due process because the hearing notice on this matter mentioned only subdivision 27(f)(5); however, the referee and the board of review relied on subdivisions 27(f)(1) and (4) in rendering their decisions. Plaintiff claims that she was prejudiced by the lack of notice because she did not have the opportunity to prepare an argument with regard to these subdivisions. We find this contention without merit.

We concur with the reasoning of the circuit court regarding notice. The UA notice of determination expressly referenced subsection 27(f) of the MESA. The various subdivisions of subsection 27(f) were at issue throughout the proceedings below. Plaintiff had adequate notice that subsection 27(f), in general, was at issue in the determination of her entitlement to unemployment compensation benefits.

Reversed.