## MOTYCKA v GENERAL MOTORS CORPORATION

Docket No. 236689. Submitted June 4, 2003, at Grand Rapids. Decided July 17, 2003, at 9:05 A.M.

Marvin A. Motycka and several other former General Motors Corporation (GM) employees were denied unemployment benefits after their separation from employment with GM on the basis that they were receiving "remuneration" from GM and were on a "leave of absence" from the corporation, as those terms are used in the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.* Previously, each former employee had entered into a preretirement leave program agreement with GM, under which the former employees were eligible to receive a majority of their wages for two years, obtain service credit toward their pensions for two years, and retain health benefits during this period, but after the conclusion of which, they would be forced to retire. The Michigan Employment Security Commission board of review affirmed the denial of unemployment benefits. The former employees petitioned for judicial review in the Kalamazoo Circuit Court, William G. Schma, J., which reversed the decision of the board of review, concluding that the payments the petitioners were receiving under the agreement with GM constituted separation pay, not remuneration, and that the petitioners were not on a leave of absence because they were permanently separated from their employment with GM. GM appealed by leave granted.

The Court of Appeals *held*:

To be eligible for unemployment benefits under the MESA, an individual must be unemployed. An individual is unemployed under the MESA for "any week during which he or she performs no services and with respect to which remuneration is not payable to the individual." MCL 421.48(1). Payments in the form of termination, separation, or severance payments are not "remuneration" within the meaning of the act, MCL 421.48(2), and an individual is not considered "unemployed" if the individual is on a "leave of absence" from work. MCL 421.48(3). Here, the petitioners were not on a leave of absence, which connotes a temporary release from work, because the petitioners, in fact, could not return to work for GM under their agreement. Similarly, the payments the petitioners received from

GM pursuant to their agreement did not constitute remuneration, because these payments were in the form of termination, separation, or severance allowances. MCL 421.44 and 421.48.
    Affirmed.

*Paul A. Wright* for Marvin A. Motycka.

*Mark C. Pieroni* for General Motors Corporation.

Before: SMOLENSKI, P.J., and COOPER and FORT HOOD, JJ.

PER CURIAM. Respondent General Motors Corporation (GM) appeals by leave granted from the trial court's August 28, 2001, order reversing the decision of the Michigan Employment Security Commission's (MESC) board of review. We affirm.

In this case we are asked to decide whether the consideration petitioners received upon their separation from GM amounted to remuneration, as defined under the Michigan Employment Security Act (MESA), MCL 421.1, *et seq.* At the same time, we must also determine whether petitioners' preretirement status amounted to a leave of absence, whereby petitioners could not be considered "unemployed" under subsection 48(3) of the MESA, MCL 421.48(3).[1] We conclude that the trial court properly applied the law and determined that petitioners were not on a leave of absence or receiving remuneration when they requested unemployment benefits.

Petitioners are former employees of GM's metal fabricating plant in Kalamazoo. In August 1997, GM informed petitioners that the Kalamazoo plant was

---

[1] MCL 421.48 was subsequently amended by 2002 PA 192, effective April 26, 2002. All references to § 48 in this opinion will relate to the statute as it existed before the 2002 amendment. However, we note that subsection 48(3) was not substantively altered by the 2002 amendment.

closing. Thereafter, GM provided several separation plans for its employees. Each petitioner in this case chose the document 117 leave option, which was the preretirement leave program articulated in the 1996 collective bargaining agreement between GM and the United Auto Workers. Pursuant to this agreement, employees with a minimum of twenty-eight years of service were eligible to receive eighty-five percent of their wages for two years, obtain service credit toward their pension for two years, and retain their health benefits during this time period. At the conclusion of this two-year period, however, the employees would be forced to retire.

Petitioners all filed for unemployment benefits when they separated from GM in 1999. These requests were ultimately denied, with the explanation that petitioners were receiving remuneration from GM. A majority of the MESC's board of review affirmed the denial of benefits. The board of review found that petitioners were not "unemployed" under the statute because they were on a leave of absence from work pursuant to an agreement with their bargaining agent. The trial court subsequently reversed this decision and held that the payments petitioners received under document 117 amounted to separation pay. The trial court further concluded that the case law clearly provides that a leave of absence is a temporary condition. Because petitioners were permanently separated from employment with GM, the trial court determined that they were not on a leave of absence.

On appeal, GM alleges that the trial court erroneously reversed the decision reached by the board of review. We disagree. Pursuant to Const 1963, art 6, § 28, a court that conducts a direct review of an

administrative decision must determine whether the action was authorized by law and if the decision was supported by competent, material, and substantial record evidence. *Boyd v Civil Service Comm*, 220 Mich App 226, 232; 559 NW2d 342 (1996). Substantial evidence is evidence that reasonable persons would accept as sufficient proof to support a decision. *In re Kurzyniec Estate*, 207 Mich App 531, 537; 526 NW2d 191 (1994). However, "when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd, supra* at 234. Matters involving the interpretation of statutes are reviewed de novo; nevertheless, unless an interpretation is clearly wrong we will generally defer to the construction given a statute by the agency charged with its interpretation. *Koontz v Ameritech Services, Inc*, 239 Mich App 34, 37; 607 NW2d 395 (1999), rev'd on other grounds 466 Mich 304 (2002).

The primary goal in statutory construction is to ascertain and give effect to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003). "If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Statutory language should be construed reasonably and in agreement with the statute's purpose. *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). When a term or phrase is not defined in a statute, the court may consult a dictionary to ascer-

tain its commonly accepted meaning. *Chandler v Muskegon Co*, 467 Mich 315, 319-320; 652 NW2d 224 (2002); see also MCL 8.3a.

The MESA is a remedial act that was enacted "to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment." *Tomei v General Motors Corp*, 194 Mich App 180, 184; 486 NW2d 100 (1992). Accordingly, the provisions of the MESA are liberally construed; whereas, any disqualification provisions are narrowly construed. *Id.* To be eligible for unemployment benefits under the MESA, an individual must first be considered "unemployed." See MCL 421.28(1); MCL 421.48. An individual is "unemployed" under subsection 48(1) for "any week during which he or she performs no services and with respect to which remuneration is not payable to the individual . . . ." Any amounts paid to a claimant in the form of retroactive pay or in lieu of notice are considered remuneration for purposes of determining unemployment status. MCL 421.48(2). However, "payments in the form of termination, separation, severance or dismissal allowances, and bonuses, shall not be deemed wages or remuneration within the meaning of this section." MCL 421.48(2). An individual is not considered unemployed under subsection 48(3) "during any *leave of absence* from work granted by an employer either at the request of the individual or pursuant to an agreement with the individual's duly authorized bargaining agent, or in accordance with law." (Emphasis added.)

GM claims that petitioners are disqualified from receiving unemployment benefits because they accepted a leave of absence pursuant to an agree-

ment with their authorized bargaining agent. Quoting the *Merriam Webster's Collegiate Dictionary*, GM argues that a leave of absence has been defined as "[p]ermission to be absent from duty or employment." Thus, GM opines that the trial court erroneously considered the fact that petitioners were forced to retire and could not return to work with GM. However, as noted by the trial court and petitioners, Black's Law Dictionary (7th ed) defines a leave of absence as a "*temporary absence* from employment or duty with the intention to return." (Emphasis added.)

In *American Telephone & Telegraph Co v Employment Security Comm*, 376 Mich 271, 279; 136 NW2d 889 (1965), our Supreme Court held that the normally accepted meaning of "leave of absence" was a temporary authorized release from work. GM suggests that *American Telephone, supra*, is distinguishable from the instant case because it construes a former section of the MESA dealing with pregnancy leaves that has since been rescinded. However, GM fails to recognize that the Supreme Court reaffirmed the concept that a leave of absence is a temporary release from work in *Employment Security Comm v Vulcan Forging Co*, 375 Mich 374, 379; 134 NW2d 749 (1965). The issue in *Vulcan, supra*, was whether a "leave of absence," as that phrase is used in § 48, could be interpreted to mean a vacation. *Id.* at 379. In dismissing this argument, the Supreme Court noted that the Legislature had defined a leave of absence in § 29 of the MESA. *Vulcan, supra* at 379. Thus, the Supreme Court determined that a leave of absence was "an authorized temporary absence from work for other than vacation purposes." *Id.*

We likewise conclude that the phrase "leave of absence," as used in subsection 48(3), denotes an authorized *temporary* release from work. We further note that there is ample evidence in the record to support the trial court's conclusion that petitioners were not temporarily released from work. Indeed, GM admitted that petitioners could not return to work for a GM facility after electing the document 117 leave option. Moreover, the phrase "leave of absence" was conspicuously missing from the documents describing the two-year, preretirement leave program. Because the consideration petitioners received was in the form of a termination, separation, or severance allowance, it is not considered remuneration under §§ 44 or 48 of the MESA. Accordingly, the trial court properly reversed the board of review's decision.

Affirmed.