DEPARTMENT OF EDUCATION v GROSSE POINTE
PUBLIC SCHOOLS
GROSSE POINTE PUBLIC SCHOOLS v DEPARTMENT
OF EDUCATION

Docket Nos. 252288, 252428. Submitted March 15, 2005, at Detroit. Decided May 5, 2005, at 9:05 a.m. Leave to appeal sought.

The mother of a student attending a private school within the limits of the Grosse Pointe Public School District requested an independent educational evaluation (IEE) for the student after the school district concluded the student did not need additional physical therapy. The school district denied her request for an IEE at public expense. The mother filed a complaint with the Wayne County Regional Education Service Agency, which concluded that the student was not entitled to the IEE because it was not an auxiliary service under MCL 380.1296. Upon investigation at the mother's request, the Department of Education determined that the school district violated the statutes and administrative rules that provide that students voluntarily enrolled in private schools have the same rights to an IEE as public school students. The department concluded that the school district had an obligation to either grant the IEE at public expense or request a due process hearing, and ordered the school district to do so. The school district then paid for the IEE. Subsequently, the Grosse Pointe Public Schools (GPPS) appealed the administrative decision to the Wayne Circuit Court. The GPPS also brought a separate action in that court for declaratory and injunctive relief, in part seeking to enjoin the department from requiring school districts to provide special education procedural safeguards to students voluntarily enrolled in private schools. The court, Robert J. Colombo, Jr., J., consolidated the actions, and concluded that MCL 380.1701 and 1999 AC, R 340.1723c require an IEE at public expense for a handicapped student in a private school. The court affirmed the administrative decision and dismissed the complaint. The GPPS appealed the dismissal of the complaint, and appealed by leave granted the decision on judicial review of the administrative decision. The appeals were consolidated.

The Court of Appeals *held*:

1. Although the GPPS has already paid for, and the student has received, the IEE, the issues raised are not moot because they are of public significance and likely to recur, yet evade judicial review, given the transitory nature of the educational process.

2. The school district was required to provide handicapped persons in private schools the same special education services and procedural safeguards, including an IEE at public expense, it provides students at public schools, pursuant to the plain language of MCL 380.1296 and 380.1701 and pursuant to Rule 340.1723c when these provisions are read *in pari materia*. In particular, an IEE at public expense, while a procedural safeguard, is an ancillary service under MCL 380.1296 that local school districts are required to provide to children with disabilities attending nonpublic schools.

3. The GPPS's issue concerning violation of a part of the Headlee Amendment, Const 1963, art 9, § 29, is moot because it did not refuse to pay for the IEE and seek declaratory judgment. Moreover, the issue is irrelevant because the state's plan for special education is not the basis for IEEs being provided to students at private schools.

4. The GPPS lacks standing to raise issues concerning alleged violations of Title II of the Americans with Disabilities Act and 29 USC 794.

Affirmed.

TALBOT, P.J., dissenting, would dismiss the GPPS's claim as moot without reaching the merits of the issues. Because the student has already received the IEE at public expense, there is no existing fact or right at issue in this case. The majority's conclusion that the doctrine of "capable of repetition, yet evading review" applies is nothing more than speculation. There is no showing that the challenged action is too short in duration to be fully litigated or that there is a reasonable expectation that the GPPS will be subjected to the same action by the same party again. A party cannot voluntarily settle its claims, bypass administrative review, and then seek redress from the courts to settle potential future claims.

SCHOOLS — NONPUBLIC SCHOOLS — SPECIAL EDUCATION — INDEPENDENT EDUCATIONAL EVALUATIONS.

A public school district is required to provide handicapped students in private schools the same special education services and procedural safeguards, including an independent educational evaluation at public expense, it provides students at public schools; an independent educational evaluation, while a procedural safeguard,

is an ancillary service for the handicapped required under the statutes concerning special education (MCL 380.1296; MCL 380.1701; 1999 AC, R 340.1723c).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *D.J. Pascoe*, Assistant Attorney General, for the Department of Education.

*Clark Hill PLC* (by *Robert A. Lusk, James E. Brenner*, and *Paul C. Smith*) for the Grosse Pointe Public Schools.

Amici Curiae:

*LaPointe & Associates, P.C.* (by *Jeffrey J. Butler* and *Paul J. Zimmer*), for the Wayne County Regional Educational Service Agency and the Michigan Association of School Boards.

Before: TALBOT, P.J., and JANSEN and GAGE, JJ.

JANSEN, J. Grosse Pointe Public Schools appeals as of right a circuit court order of dismissal. Following a Michigan Department of Education administrative decision requiring the Grosse Pointe Public School District to provide D.G., a student voluntarily attending a private school, an individual educational evaluation (IEE)[1] at public expense, appellant filed two actions in circuit court: an appeal seeking review of the administrative decision (Lower Court No. 03-304444-AA), and a complaint for declaratory and injunctive relief (Lower Court No. 03-304443-CZ). The two cases were consolidated in the circuit court and resolved by the same

---

[1] An IEE is a special education procedural safeguard that parents have a right to at public expense if the parent disagrees with an evaluation obtained by a public agency. See 20 USC 1415; *School Committee of the Town of Burlington v Massachusetts Dep't of Ed*, 471 US 359, 368-369; 105 S Ct 1996; 85 L Ed 2d 385 (1985).

"order of dismissal." Appellant filed an application for leave to appeal the administrative review (Docket No. 252288), and this Court granted the application and consolidated it with the appeal as of right of the dismissal of the request for declaratory and injunctive relief (Docket No. 252428).[2]

I

D.G. is a minor in remission from a brain tumor who voluntarily attends a private school located within the limits of the Grosse Pointe School District (the School District). He and his mother, S.G., reside outside the school district.[3] In September 2002, S.G. requested that the School District evaluate D.G.'s physical therapy needs because he had developed problems walking. After an evaluation, the School District stated that D.G. did not need any physical therapy in addition to the group therapy he was already receiving at the private school. S.G. disagreed with this conclusion, and requested that the School District grant her son an IEE. The School District denied the request for an IEE, claiming "that an independent evaluation is not an

---

[2] The Wayne County Regional Educational Service Agency and the Michigan Association of School Boards filed an amicus curiae brief.

[3] We note that the fact that D.G. resides outside the School District is irrelevant because a school district must provide auxiliary special education services to a handicapped pupil attending a nonpublic school located within the district, even though the pupil may reside in another district. OAG, 1981-1982, No 5,884, p 129 (April 20, 1981). The Legislature has not required the school district in which the nonpublic school pupil resides to reimburse the school district providing such services. *Id.* Although Attorney General opinions are not binding on this Court, they can be persuasive authority, in particular on an issue where there is no other authority. *Williams v City of Rochester Hills*, 243 Mich App 539, 557; 625 NW2d 64 (2000), citing *Frey v Dep't of Mgt & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987), and *Indenbaum v Bd of Medicine (After Remand)*, 213 Mich App 263, 274; 539 NW2d 574 (1995).

ancillary service under Michigan law that the District must provide to private schools."

Following the School District's denial of the request for an IEE, S.G. filed a complaint with the Wayne County Regional Educational Service Agency (Wayne RESA). Wayne RESA addressed the complaint, indicated that the governing regulations were 34 CFR 300.457, promulgated under the Individuals with Disabilities Education Act (IDEA), 20 USC 1400 *et seq.*, and MCL 380.1296,[4] which is the Michigan auxiliary services act (ASA), and concluded that D.G. was not entitled to an IEE on the basis that IEEs are not included in the definition of auxiliary services provided in MCL 380.1296. Subsequently, S.G. sent a letter to the Policy, Planning, and Compliance Program of the Michigan Department of Education (MDE) appealing the School District's and Wayne RESA's decisions denying D.G. an IEE, pursuant to 1999 AC, R 340.1852.

The MDE conducted an investigation and issued a report finding that the School District had violated 1999 AC, R 340.1701[5] by denying the request because of

---

[4] MCL 380.1296 provides:

> The board of a school district that provides auxiliary services specified in this section to its resident pupils in the elementary and secondary grades shall provide the same auxiliary services on an equal basis to pupils in the elementary and secondary grades at nonpublic schools. The board may use state school aid to pay for the auxiliary services. The auxiliary services shall include health and nursing services and examinations; street crossing guards services; national defense education act testing services; teacher of speech and language services; school social work services; school psychological services; teacher consultant services for handicapped pupils and other ancillary services for the handicapped; remedial reading; and other services determined by the legislature. Auxiliary services shall be provided under rules promulgated by the state board.

[5] Rule 340.1701 provides:

MCL 380.1296; Chapter X of the State Plan; and 1999 AC, R 340.1723c.[6] The MDE's findings stated that MCL 380.1296 and Chapter X of the State Plan[7] provide that students voluntarily enrolled in private schools are entitled to the same rights to an evaluation and procedural safeguards as public school students, including the IEEs provided for in Rule 340.1723c.[8] The MDE further stated that, in response to S.G.'s request for an

---

All public agencies in the state, as those agencies are defined at 34 C.F.R. §300.22 of the regulations implementing the individuals with disabilities education act, 20 U.S.C. chapter 33, §1400 et seq., shall comply with these rules; all provisions of the state's application for federal funds under part B of the individuals with disabilities education act, 20 U.S.C. chapter 33, §1400 et seq.; the requirements of part B of the individuals with disabilities education act; and the regulations implementing the individuals with disabilities education act, 34 C.F.R. part 300, which are adopted by reference in these rules. [As amended, effective June 6, 2002; available at <http://www.michigan.gov/orr> (accessed April 28, 2005).]

[6] As amended, effective June 6, 2002; available at <http://www. michigan.gov/orr> (accessed April 28, 2005).

[7] The "State Plan" is a part of Michigan's application for certain federal funds, titled "State Plan for Special Education for Federal Fiscal Year 2000." "Chapter X," which is titled "Private Schools" and includes a section titled "Policies and Procedures for Students with Disabilities Enrolled in Private or Nonpublic Schools," provides, in part:

In general, students enrolled in private or nonpublic schools participate in public schools in two manners: (1) through the State Auxiliary Services Act students are provided needed services in their nonpublic schools; and (2) through dual enrollment in the public schools in public school special education programs. The State Board of Education has established policies and procedures to assure that children enrolled in nonpublic schools participate in special education programs and services assisted or carried out under Part B of IDEA to the extent consistent with their number and location in the state.

[8] Rule 340.1723c provides, in relevant part:

IEE, the School District had an obligation to either grant the request or to request a due process hearing to address the matter. And, the MDE concluded, by not doing either, the School District violated Rule 340.1701. The MDE ordered the School District to either provide an IEE at public expense or to request a due process hearing within two days of receiving the report. The School District paid $125 for D.G. to have the IEE.

Thereafter, appellant filed a complaint for declaratory and injunctive relief in the Wayne Circuit Court. In the complaint, appellant alleged violations of the IDEA; the ASA: § 504 of the Rehabilitation Act of 1973, 29 USC 794 (§ 504); Title II of the Americans with Disabilities Act (ADA), 42 USC 12131 *et seq.*; the Administrative Procedures Act, MCL 24.201 *et seq.*; and a part of the Headlee Amendment, Const 1963, art 9, § 29. Appellant requested that the State Plan be declared illegal to the extent that it required any school district to provide special education procedural safeguards to students voluntarily enrolled in nonpublic schools, and that the court permanently enjoin the MDE from enforcing the State Plan to require any school district to provide special education procedural safeguards to voluntarily enrolled private school students.

(2) A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by a public agency. The parent shall submit the parent's disagreement and request in written, signed, and dated form. However, the public agency may initiate a hearing under R 340.1724 to show that its evaluation is appropriate. The public agency shall respond, in writing, to the request within 7 calendar days of its receipt by indicating the public agency's intention to honor the request or to initiate the hearing procedure under R 340.1724. If the hearing officer determines that the evaluation is appropriate, then the parent still has the right to an independent educational evaluation, but not at public expense.

The circuit court's decision stated that MCL 380.1701,[9] which is part of the Michigan mandatory special education act (MMSEA), clearly indicates that the State Board of Education's duties are not limited to special education programs in public schools for public school students. The circuit court noted and relied on the all-inclusive nature of the language from MCL 380.1701, which provides for "*every* handicapped person" and "*all* special education programs and services." The circuit court then cited Rule 340.1723c as the basis for the decision that D.G. was entitled to an IEE. The circuit court concluded that Rule 340.1723c extends to handicapped persons in both public and private schools, and further authorizes an IEE at public expense if the parent disagrees with a public agency's evaluation because MCL 380.1701 and Rule 340.1723c, the rule promulgated under that statute, "afford handicapped students in private schools the same procedural protections of students in private schools including an IEE." The circuit court dismissed as irrelevant appellant's arguments premised on the mistaken assumption that its duty to provide an IEE derived from the State Plan, because that duty results only from Rule 340.1723c. The MDE's decision was affirmed and the complaint for declaratory and injunctive relief was dismissed.

Appellant filed an application for leave to appeal the decision on administrative review, and appealed as of right the dismissal of the request for declaratory and

---

[9] MCL 380.1701 provides, in pertinent part:

The state board shall:

(a) Develop, establish, and continually evaluate and modify in cooperation with intermediate school boards, a state plan for special education which shall provide for the delivery of special education programs and services designed to develop the maximum potential of every handicapped person. The plan shall coordinate all special education programs and services.

injunctive relief. This Court entered an order granting appellant's application for leave and, on its own motion, consolidated the appeals.

II

As an initial matter we must address whether the issues presented are moot. The MDE contends that the issues are moot because appellant has already paid for the IEE and is not entitled to reimbursement, regardless of whether the initial ruling was valid. We disagree.

"A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). A reviewing court will not reach moot issues or declare principles or rules of law that have no practical effect on the case before it "unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002). This Court can grant declaratory relief only if there is an actual controversy. MCR 2.605; *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). Because of the requirement of an actual controversy, this Court may not "decide moot questions in the guise of giving declaratory relief." *Dep't of Social Services v Emmanuel Baptist Preschool*, 434 Mich 380, 470; 455 NW2d 1 (1990) (opinion of BOYLE, J.), citing *McMullen v Secretary of State*, 339 Mich 175; 63 NW2d 599 (1954).

Appellant has already paid for D.G. to have the IEE, and D.G. has already received the IEE, regardless of what happens in these proceedings; thus, there is no actual controversy. Consequently, this Court should only review appellant's issues if they are of "public significance" and "likely to recur, yet evade judicial

review." *Federated Publications, Inc, supra* at 112. The issues have public significance, both for public school districts and for the special education students they serve. Appellant paid for the IEE rather than request a due process hearing under the rules and, instead of challenging the decision administratively, appealed the decision to the circuit court. Although the School District already has paid for D.G.'s IEE, this issue could likely recur with other special education students. The issues could likely recur and evade review even if school districts refused to pay for the IEEs, because it may be difficult both for a student to challenge that action and for an actual controversy to exist given "the transitory nature of the educational process . . . ." *Dep't of Civil Rights ex rel Forton v Waterford Twp Dep't of Parks & Recreation*, 425 Mich 173, 176 n 1; 387 NW2d 821 (1986), citing *Roe v Wade*, 410 US 113, 125; 93 S Ct 705; 35 L Ed 2d 147 (1973). This type of issue could evade review if school districts refused to pay because, with time, the student could move on and potentially be done with school before the matter made it through the judicial process. We will address the issues raised because they have public significance, both for public school districts and for the special education students they serve, and are capable of repetition, but could evade review if we decline to address them.

III

Appellant argues that the ASA, the MMSEA, and Rule 340.1723c do not require public school districts to provide IEEs to students voluntarily enrolled in private schools. We find that, when read *in pari materia*, the ASA, the MMSEA, and the rules promulgated under the

MMSEA require that appellant either provide for the IEE or request a due process hearing as provided by the rules.

### A. STANDARD OF REVIEW

In *Motycka v Gen Motors Corp*, 257 Mich App 578, 580-581; 669 NW2d 292 (2003), this Court provided the following standard when reviewing a circuit court's review of an administrative decision:

> Pursuant to Const 1963, art 6, § 28, a court that conducts a direct review of an administrative decision must determine whether the action was authorized by law and if the decision was supported by competent, material, and substantial record evidence. *Boyd v Civil Service Comm*, 220 Mich App 226, 232; 559 NW2d 342 (1996). Substantial evidence is evidence that reasonable persons would accept as sufficient proof to support a decision. *In re Kurzyniec Estate*, 207 Mich App 531, 537; 526 NW2d 191 (1994). However, "when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd, supra* at 234. Matters involving the interpretation of statutes are reviewed de novo; nevertheless, unless an interpretation is clearly wrong we will generally defer to the construction given a statute by the agency charged with its interpretation. *Koontz v Ameritech Services, Inc*, 239 Mich App 34, 37; 607 NW2d 395 (1999), rev'd on other grounds 466 Mich 304 (2002).

This Court reviews de novo both declaratory rulings and questions of statutory interpretation. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003); *Taylor v Blue Cross & Blue Shield of Michigan*, 205 Mich App 644, 649; 517 NW2d 864 (1994).

## B. MICHIGAN MANDATORY SPECIAL EDUCATION ACT

The circuit court dismissed the complaint for declaratory and injunctive relief and affirmed the administrative decision on appeal because MCL 380.1701 applies to every handicapped person, and Rule 340.1723c, which was promulgated under the statute, provides for an IEE. We affirm the circuit court decision because the School District was required to provide handicapped persons in private schools the same services it provides students of public schools, including an IEE at public expense, pursuant to MCL 380.1701 (part of the MMSEA), Rule 340.1723c, which was promulgated under MCL 380.1701, and MCL 380.1296 (the ASA), or request a due process hearing pursuant to 1999 AC, R 340.1724[10] to show that its evaluation was appropriate.

Under the IDEA, states must fulfill certain conditions in order to receive federal assistance, including having a policy in effect " 'that assures all children with disabilities the right to a free appropriate public education,' " and developing a detailed plan implementing that policy. *Jenkins v Carney-Nadeau Pub School*, 201 Mich App 142, 143-144; 505 NW2d 893 (1993), quoting former 20 USC 1412(1); cf. 20 USC 1412(a)(1). In Michigan, special education programs and services are mandated by the Revised School Code, MCL 380.1 *et seq.* The MMSEA, which is MCL 380.1701 *et seq.* and which was enacted under the IDEA, affirmatively requires the state to create "special education programs and services designed to develop the maximum potential *of every handicapped person.*" MCL 380.1701 (emphasis added); see also *Chuhran v Walled Lake Consoli-*

---

[10] As amended, effective June 6, 2002; available at <http://www.michigan.gov/orr> (accessed April 28, 2005).

*dated Schools*, 839 F Supp 465, 474 (ED Mich, 1993). Specifically, MCL 380.1701 mandates:

The state board shall:

(a) Develop, establish, and continually evaluate and modify in cooperation with intermediate school boards, a state plan for special education which shall provide for the delivery of special education programs and services designed to develop the maximum potential *of every handicapped person.* The plan shall coordinate all special education programs and services.

(b) Require each intermediate school board to submit a plan pursuant to section 1711, in accordance with the state plan, to be approved by the state board.

(c) Promulgate rules setting forth the requirements of the plans and procedures for submitting them. [Emphasis added.]

Pursuant to MCL 380.1701, the State Board of Education and the intermediate school districts have the duty to develop and establish a plan for special education, but the local school district has the duty and responsibility to provide the special education services. Under the rule-making power delegated to it by the Legislature in MCL 380.1701, the State Board of Education has promulgated detailed rules designed to protect a handicapped person's statutory right to participate in special education programs. See 1999 AC, R 340.1701*et seq.*[11] In particular, the State Board of Education promulgated Rule 340.1723c, which provides a right to an IEE. Specifically, Rule 340.1723c states, in relevant part:

(2) *A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. The parent shall*

---

[11] As amended; available at <http://www.michigan.gov/orr> (accessed April 28, 2005).

*submit the parent's disagreement and request in written, signed, and dated form.* However, the public agency may initiate a hearing under R 340.1724 to show that its evaluation is appropriate. The public agency shall respond, in writing, to the request within 7 calendar days of its receipt by indicating the public agency's intention to honor the request or to initiate the hearing procedure under R 340.1724. If the hearing officer determines that the evaluation is appropriate, then the parent still has the right to an independent educational evaluation, but not at public expense. [Emphasis added.]

There is nothing in MCL 380.1701 or Rule 340.1723c limiting their coverage to students enrolled in public schools. MCL 380.1701 is applicable to "every handicapped person"; thus, Rule 340.1723c, promulgated under MCL 380.1701, is applicable to handicapped persons voluntarily enrolled in private schools. The language of the statute plainly expresses the intention of the Legislature for MCL 380.1701 (and the rules promulgated pursuant to this statute) to apply to every handicapped person, not just those enrolled in public schools.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes,* 470 Mich 661, 665; 685 NW2d 648 (2004). Nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002); *Polkton Charter Twp v Pellegrom,* 265 Mich App 88, 102; 693 NW2d 170 (2005). The Legislature is presumed to have intended the meaning it plainly expressed. *Pohutski v City of Allen Park,* 465 Mich 675, 683; 641 NW2d 219 (2002). Courts may not speculate about the probable intent of the Legislature beyond the language expressed in the statute. *Id.;*

*Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 173; 610 NW2d 613 (2000). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999); *Toth v AutoAlliance Int'l, Inc*, 246 Mich App 732, 737; 635 NW2d 62 (2001). Remedial statutes are to be liberally construed in favor of the persons intended to be benefited. *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993); *Nelson v Assoc Financial Services Co of Indiana, Inc*, 253 Mich App 580, 590; 659 NW2d 635 (2002). Giving effect to the intent of the Legislature and the plainly expressed language of MCL 380.1701, we hold that an IEE at public expense is available to "every handicapped person," not just handicapped persons enrolled in public schools.

Even if we do not agree with the use of "every handicapped person" in this context, the plain language of the statute prevails. The wisdom of a statute is for the determination of the Legislature, and the law must be enforced as written. *Smith v Cliffs on the Bay Condo Ass'n*, 463 Mich 420, 430; 617 NW2d 536 (2000); *City of Lansing v Lansing Twp*, 356 Mich 641, 648; 97 NW2d 804 (1959); *In re Worker's Compensation Lien*, 231 Mich App 556, 563; 591 NW2d 221 (1998). A court may not inquire into the knowledge, motives, or methods of the Legislature, *Fowler v Doan*, 261 Mich App 595, 599; 683 NW2d 682 (2004), and may not impose a construction on a statute on the basis of a policy decision different from that chosen by the Legislature, *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 752; 641 NW2d 567 (2002). As such, the plain language of MCL 380.1701 clearly makes the services provided in Rule 340.1723c available to every handicapped person, not just handicapped persons enrolled in public schools.

Appellant and the amici curiae also contend that Rule 340.1723c, promulgated pursuant to the MMSEA, cannot resolve a question covered by the ASA, and that there cannot be a conflict between a statute and an administrative rule. The amici curiae argue that the MMSEA cannot be read so expansively because it renders the ASA meaningless. However, both contentions are without merit because the ASA and the MMSEA, and rules promulgated under the MMSEA, do not conflict and can be read in harmony; they allow an IEE at public expense (or a hearing under Rule 340.1724 to show the evaluation was appropriate).

Statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998); *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 146-147; 662 NW2d 758 (2003). The object of the *in pari materia* rule is to give effect to the legislative purpose as found in harmonious statutes. *Jennings v Southwood*, 446 Mich 125, 137; 521 NW2d 230 (1994); *Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 280; 597 NW2d 235 (1999). The MMSEA and the ASA share the common purpose of providing special education services to handicapped persons and should be read together, even though they were enacted on different dates. The purpose of the ASA is to provide special education students "services designed to remedy physical and mental deficiencies and to provide for the physical health and safety of the children." *Snyder v Charlotte Pub School Dist*, 421 Mich 517, 530 n 4; 365 NW2d 151 (1984). The purpose of the MMSEA is to create special education programs and services designed to develop the "maximum potential of every handicapped person." MCL

380.1701. "Michigan enacted MMSEA to address the needs of students with handicaps." *Lenhoff v Farmington Pub Schools*, 680 F Supp 921, 922 (ED Mich, 1988). The ASA and the MMSEA share the common purpose of aiding those in need of special education, are not contrary, and can be read in harmony. Applying MCL 380.1701 as plainly expressed, along with Rule 340.1723c, does not conflict with the ASA, which is found at MCL 380.1296 and instead works in harmony to provide services for those with special education needs, as will be discussed further.

For these reasons, the School District was required to provide handicapped students in private schools the service specified in Rule 340.1723c.[12]

### C. AUXILIARY SERVICES ACT

When the MMSEA and the ASA are read in harmony, D.G. is entitled to an IEE under MCL 380.1296, which provides:

---

[12] We note that the MDE, in providing the relief, relied in large part on Rule 340.1701 in its decision. However Rule 340.1723c was also noted as a reason in the MDE decision. And appellant, in its complaint for declaratory and injunctive relief, acknowledges that S.G.'s complaint was brought pursuant the "IDEA, the MMSEA and the administrative rules promulgated pursuant to those Acts." Regardless, even if the MDE and the circuit court did not address the issue properly, this Court affirms a lower court's ruling or an administrative decision when the court or agency reaches the right result, albeit for the wrong reason. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 531 n 6; 644 NW2d 765 (2002); *Morosini v Citizens Ins Co of America*, 224 Mich App 70, 86; 568 NW2d 346 (1997). We also note that appellant brought two lower court actions: an action for declaratory and injunctive relief and an appeal from the MDE decision. Even if the review of the MDE decision is limited to Rule 340.1701 or the ASA, the denial of the request for declaratory and injunctive relief was based on MCL 380.1701 and Rule 340.1723c, and these issues were raised in the request for declaratory and injunctive relief.

The board of a school district that provides auxiliary services specified in this section to its resident pupils in the elementary and secondary grades shall provide the same auxiliary services on an equal basis to pupils in the elementary and secondary grades at nonpublic schools. The board may use state school aid to pay for the auxiliary services. The auxiliary services shall include health and nursing services and examinations; street crossing guards services; national defense education act testing services; teacher of speech and language services; school social work services; school psychological services; teacher consultant services for handicapped pupils *and other ancillary services for the handicapped;* remedial reading; and other services determined by the legislature. Auxiliary services shall be provided under rules promulgated by the state board. [Emphasis added.]

Appellant contends that the ASA does not provide for an IEE because it says nothing about procedural safeguards, and an IEE is a procedural safeguard. Appellant further contends that, because the statute provides that "[a]uxiliary services shall be provided under rules promulgated by the state board," only rules promulgated pursuant to MCL 380.1296 can be considered to provide for auxiliary or ancillary services.

"Ancillary services" is not defined in the current Revised School Code or administrative rules, although 1999 AC, R 340.1701c refers to "ancillary services" as defined in the Revised School Code.[13] This seemingly is an attempt to convert to the term "related services," which is used by the IDEA and by 34 CFR 300.24, promulgated under that statute. In OAG, 1999-2000,

---

[13] Rule 340.1701c(a) provides: " 'Related services' means services defined at 34 C.F.R. §300.24 and ancillary services as defined in 1976 PA 451, MCL 380.1 et seq., which is [sic] available for public review at the department and at intermediate school districts." (As amended, effective June 6, 2002; available at <http://www.michigan.gov/orr> [accessed April 28, 2005].)

No 7,014, p 18 (April 9, 1999), the legislative history of the Revised School Code was examined, and whether local school districts were required under MCL 380.1296 to provide children with disabilities attending nonpublic schools the ancillary services set forth in a special education administrative rule, 1997 AACS, R 340.1701(c), was addressed. In 1965, when the auxiliary services provision was originally added to the School Code of 1955 it did not include the language "and other ancillary services for the handicapped." In 1973 AACS, R 340.1701, for purposes of the special education statute and rules, however, "ancillary services" was defined:

(1) "Ancillary services" means evaluation, supplemental instruction or therapy provided as:

(a) Audiological, medical, psychiatric or psychological evaluation.

(b) Occupational, physical, speech, work or other therapy.

(c) Mobility instruction, teacher consultant service, social work and services provided by other non-teaching personnel.

In 1976, when the School Code of 1955 was repealed and recodified as the School Code of 1976, the language "other ancillary services for the handicapped" was included in the ASA, MCL 380.1296. OAG, 1999-2000, p 19-20.

The Attorney General concluded that the Legislature, by inserting the phrase "and other ancillary services for the handicapped" into MCL 380.1296, intended to include as auxiliary services those services that fell within the definition of ancillary services contained in the then-applicable version of Rule 340.1701 (a rule promulgated under the MMSEA). The Attorney General opined:

When the Legislature revisited the subject of auxiliary services in section 1296 of the School Code of 1976, it did not simply repeat the prior statutory language. Instead, it chose to add the phrase "and other ancillary services for the handicapped." That new phrase, which must be given meaning and effect, was added just five years after the Legislature mandated special education and expanded educational opportunities for students with disabilities. The Legislature, presumably, was aware of the special education provisions of the same statute that provided for auxiliary services and the special education administrative rules that implemented those provisions dealing with special education. The use of the phrase "and other ancillary services for the handicapped" in section 1296 tracks precisely the phrase "ancillary services" found in the special education administrative rule R 340.1701 in 1976. It strains credibility to contend that the use of the identical phrase "ancillary services" in first the rule and then in the statute was simply accidental. Rather, it is more reasonable to conclude that the Legislature made a conscious decision to expand auxiliary services for children with disabilities in nonpublic schools so as to include those "ancillary services" set forth in special education administrative rule R 340.1701.

It is my opinion, therefore, that the auxiliary services, which local school districts are required by section 1296 of the Revised School Code to provide to children with disabilities attending nonpublic schools, include those ancillary services set forth in special education administrative rule 1997 AACS, 340.1701(c). [OAG, 1999-2000, p 21.]

We agree with the Attorney General that the legislative history reveals that the Legislature intended that the school districts provide ancillary services in a manner consistent with the rules promulgated under the special education provisions of the Revised School Code, including the MMSEA. Although Attorney General's opinions are not binding on this Court, they can be persuasive authority. *Williams v City of Rochester Hills*, 243 Mich App 539, 557; 625 NW2d 64 (2000), citing *Frey*

*v Dep't of Mgt & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987), and *Indenbaum v Bd of Medicine (After Remand)*, 213 Mich App 263, 274; 539 NW2d 574 (1995). The Attorney General's interpretation is further supported by the language of MCL 380.1296, which states, "Auxiliary services shall be provided under rules promulgated by the state board," but does not limit this to rules promulgated pursuant to MCL 380.1296. We opine that the ancillary services that local school districts are required by MCL 380.1296 to provide to children with disabilities attending nonpublic schools include those ancillary services set forth in the special education administrative rules.

The remaining question is whether the IEE described in Rule 340.1723c is considered an auxiliary or ancillary service. Appellant contends that an IEE is a procedural safeguard, and not an auxiliary or ancillary service for the handicapped. We find that, although the IEE is a procedural safeguard, it is still an ancillary service for purposes of MCL 380.1296.

Under the IDEA, an IEE is included as a procedural safeguard that must be in place. See 20 USC 1412(a)(6)(A) and 1415(d)(2)(A). Because the MMSEA was promulgated pursuant to the IDEA, the IEE is seemingly in place as a procedural safeguard required by the IDEA. Thus, the question is whether an IEE is an ancillary service under MCL 380.1296. MCL 380.1296 provides for the "same auxiliary services on an equal basis,"[14] and includes in these auxiliary services "other ancillary services for the handicapped . . . ."

---

[14] "Equal basis" is defined in 1999 AC, R 340.291(c):

"Equal basis" means that the services shall be made available at the nonpublic school to nonpublic schoolchildren during the established regular public school day. The proportionate share of services provided to children attending nonpublic schools shall be

There appears to be no dispute that the physical therapy evaluation[15] provided to D.G. by the School District was an ancillary service that should be provided to special education students enrolled in private schools within the school district boundaries. Appellant claims that an IEE is not included as an ancillary or auxiliary service because it is a procedural safeguard that is not provided for special education students enrolled in private schools. MCL 380.1296 provides for a physical therapy evaluation and the procedural safeguards that come with the physical therapy evaluation, i.e., the IEE. The definition of "ancillary services" in 1973 AACS, R 340.1701 included "evaluation," and there is no indication that evaluation was limited to an initial evaluation. Apparently, MCL 380.1296 was adopting these ancillary services when it included the term "ancillary services."

----

based upon a formula which considers the number of children attending nonpublic school in a school district that need such services in relation to the number of children attending public school in such school district that need such services and are receiving them.

[15] In *Traverse City School Dist v Attorney General*, 384 Mich 390, 418-419; 185 NW2d 9 (1971), our Supreme Court stated:

By statutory definition and practical application, auxiliary services are special educational services designed to remedy physical and mental deficiencies of school children and provide for their physical health and safety. Functionally, they are general health and safety measures.

\* \* \*

. . . Since auxiliary services are general health and welfare measures, they have only an incidental relation to the instruction of private school children. They are related to educational instruction only in that by design and purpose they seek to provide for the physical health and safety of school children, or they treat physical and mental deficiencies of school children so that such children can learn like their normal peers.

To provide the ancillary or auxiliary services requires that these services have the same procedural safeguards that are accorded the students enrolled in public schools.

We note that the IEE requirement was added to achieve compliance with the IDEA through the MMSEA. The purpose of the IEE and these type of procedures were described as follows:

> Apparently recognizing that this cooperative approach would not always produce a consensus between the school officials and the parents, and that in any disputes the school officials would have a natural advantage, Congress incorporated an elaborate set of what it labeled "procedural safeguards" to insure the full participation of the parents and proper resolution of substantive disagreements. Section 1415(b) entitles the parents "to examine all relevant records with respect to the identification, evaluation, and educational placement of the child," to obtain an independent educational evaluation of the child, to notice of any decision to initiate or change the identification, evaluation, or educational placement of the child, and to present complaints with respect to any of the above. The parents are further entitled to "an impartial due process hearing," . . . to resolve their complaints. [*School Committee of the Town of Burlington v Massachusetts Dep't of Ed*, 471 US 359, 368-369; 105 S Ct 1996; 85 L Ed 2d 385 (1985).]

The same reasoning exists in the present case. Of what benefit is the right to ancillary services if there are no procedural safeguards to insure full and proper participation? The IEE requirement was promulgated under the MCL 380.1701, which is part of the MMSEA, and the ASA adopted language concerning ancillary services from the special education provisions. To provide services to special education students in private schools requires that the services be administered with the

availability of the same procedural protections as provided for students in the public schools.[16]

We find that IEEs at public expense are available to handicapped students in private schools pursuant to MCL 380.1296 and Rule 340.1723c.[17] Under Rule

---

[16] Appellant cites a 1980 Attorney General's opinion in support of its contention that nothing outside the language of MCL 380.1296 can be considered an ancillary service. See OAG, 1979-1980, No 5,618, p 528 (January 2, 1980). However, the opinion to which appellant refers only addresses preschool services that are clearly outside the scope of the ASA, MCL 380.1296 (which concerns auxiliary services "to pupils in the elementary and secondary grades," not preschool), and does not address whether the rules promulgated pursuant to the ASA and not contrary to the statute are authorized. *Id.* Thus, that opinion provides no support for appellant's position.

[17] Appellant contends that Rule 340.1701 is not a valid administrative rule because (1) provisions of a state's application for federal funds cannot operate as an administrative rule enforceable against the School District because the state's application for federal funds was not promulgated in the manner required by the APA, (2) the state's application for federal funds is not among the list of provisions that properly may be incorporated by reference into an administrative rule, and (3) Rule 340.1701 was not validly promulgated pursuant to the APA. Given the resolution discussed above, it is unnecessary to address this issue on appeal. The State Plan, although noted by the MDE, was not the source of the requirement for the School District to pay for the IEE. Instead, the State Plan only articulates the MDE's application of existing authority for purposes of the IDEA. The requirement to provide the IEE exists under MCL 380.1701, Rule 340.1723c, and MCL 380.1296. Although the MDE clearly indicated that Rule 340.1701 was violated, another reason stated by the MDE for its decision was Rule 340.1723c, which appellant does not contend was improperly promulgated. And, although the MDE granted D.G. the IEE at public expense in large part because of Rule 340.1701, even if this rule is invalid, this Court affirms a lower court's ruling or an administrative decision when it reaches the right result, albeit for the wrong reason. *Lakeside Oakland Dev, LC, supra* at 531 n 6; *Morosini, supra* at 86. The MDE reached the right result, and should be affirmed even if Rule 340.1701 is invalid. Further, there is no indication that Chapter X of the State Plan was functioning as a rule, contrary to appellant's contentions. See MCL 24.207. Instead, Chapter X of the State Plan is clearly an

340.1723c, the parent of a handicapped student from a private school may submit a disagreement with a public agency evaluation and request an IEE, and the school district should either honor the request or initiate due process proceedings pursuant to Rule 340.1724.

IV

Appellant also argues that the requirement that public school districts provide special education procedural safeguards to students voluntarily enrolled in private schools violates the Headlee Amendment. We disagree, believing the issue is moot and irrelevant to the proper determination of the issues because Chapter X of the State Plan does not provide the basis for IEEs

interpretive statement of the ASA, the MMSEA, and the rules promulgated pursuant to the MMSEA. And there is no indication that Rule 340.1701 incorporated Chapter X of the State Plan as an administrative rule by reference. As such, these interpretive statements lack the force of law and, therefore, are not rendered invalid because not promulgated pursuant to the rule-making requirements of the APA. *Clonlara, Inc v State Bd of Ed,* 442 Mich 230, 239; 501 NW2d 88 (1993). With regard to appellant's claim that Rule 340.1701 is invalid, appellant has not pointed directly to an APA provision with which the rule was not in substantial compliance. Appellant only claims that Rule 340.1701 was not adopted pursuant to MCL 24.243, but does not say why. An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims, *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998); *Ambs v Kalamazoo Co Rd Comm,* 255 Mich App 637, 650; 662 NW2d 424 (2003), nor may it give issues cursory treatment with little or no citation of supporting authority, *Goolsby v Detroit,* 419 Mich 651, 655 n 1; 358 NW2d 856 (1984); *Silver Creek Twp v Corso,* 246 Mich App 94, 99; 631 NW2d 346 (2001). Argument must be supported by citation to appropriate authority or policy. MCR 7.212(C)(7); *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 14; 672 NW2d 351 (2003). An appellant's failure to properly address the merits of its assertion of error constitutes abandonment of the issue. *Yee v Shiawassee Co Bd of Comm'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002).

being available at public expense to handicapped students in private schools.

## A. STANDARD OF REVIEW

This Court reviews de novo constitutional issues and issues of construction. *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998). To properly interpret the meaning of the Headlee Amendment, this Court "must ascertain the intent of the voters who passed [it]." *Durant v State Bd of Ed*, 424 Mich 364, 378; 381 NW2d 662 (1985).

## B. HEADLEE AMENDMENT

Appellant argues that Chapter X of the State Plan violates the Headlee Amendment to the extent it requires Michigan school districts to provide special education procedural safeguards to students voluntarily enrolled by their parents in private schools. The Maintenance-of-Support Clause of Const 1963, art 9, § 29, part of the Headlee Amendment, provides:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18.

As discussed earlier, the basis for the IEE is found in MCL 380.1701, Rule 340.1723c, and MCL 380.1296, and appellant does not contend that these provisions violate

Headlee requirements. The State Plan, although noted by the MDE, was not the source of the requirement for the School District to pay for the IEE; instead, the State Plan only articulates the MDE's application of existing authority for purposes of the IDEA. Chapter X of the State Plan is clearly an interpretive statement of the ASA, the MMSEA, and the rules promulgated pursuant to the MMSEA.

Additionally, the issue is clearly moot because appellant failed to follow the proper course of action, which this Court stated in *Wayne Co Chief Executive v Governor*, 230 Mich App 258, 266-267; 583 NW2d 512 (1998):

> The specific course of action a claimant faced with an unfunded new activity or service should take is to refuse to fund the activity or service in question, while at the same time seeking a declaratory judgment on its obligation under the Headlee Amendment to fund those services. *Durant v Michigan*, 456 Mich 175, 205, 210; 566 NW2d 272 (1997). The state would then either have to fund the activity, remove the mandate, or obtain a stay from the judiciary. *Id*. at 205-206.

Appellant paid for the IEE; thus, the question is moot.

For these reasons, this issue is moot and irrelevant to the proper determination of the issues because Chapter X of the State Plan does not provide the basis for IEEs being available at public expense to handicapped students in private schools.

V

Appellant next argues that a requirement mandating public schools to provide special education procedural safeguards to students voluntarily enrolled by their parents in private schools violates Title II of the

ADA and § 504. We find that appellant lacks standing with regard to this issue.

Questions of law are reviewed de novo on appeal. *Eggleston, supra* at 32; *Burt Twp v Dep't of Natural Resources*, 227 Mich App 252, 255; 576 NW2d 170 (1997), aff'd 459 Mich 659 (1999).

Appellant asserts that the MDE is discriminating against a class of disabled persons by providing special education procedural safeguards to private school students who are disabled under the IDEA and the MMSEA, but not to those students who are disabled under Title II of the ADA and § 504, and not under the IDEA and the MMSEA. But appellant, a school district, obviously is not a party that either Title II of the ADA or § 504 was enacted to protect, and is not a party in interest with a substantial personal stake in the controversy. Further, appellant cannot establish a cause under either statute because it is not a qualified individual being excluded from or denied something. See § 504; 42 USC 12132. "Standing requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large." *House Speaker v State Admin Bd*, 441 Mich 547, 554; 495 NW2d 539 (1993) That injury is generally considered to require a personal stake in the outcome of the controversy or an injury in fact. *Altman v Nelson*, 197 Mich App 467, 475; 495 NW2d 826 (1992); *Rogan v Morton*, 167 Mich App 483, 486; 423 NW2d 237 (1988). Appellant has failed to state any injury in fact from the alleged discrimination or to show how the alleged discrimination is detrimental to the School

District, but merely asserts that the MDE is discriminating against a class of disabled persons.

The School District's argument that the MDE is discriminating against disabled private school students is based on the MDE providing special education procedural safeguards to what appellant asserts is not an inclusive enough group. In reality, if this alleged discrimination were cured, the School District would be required to provide special education services, requiring increasing expenditures, to a larger group of students than they currently do. So appellant would actually only be injured if the alleged discrimination were cured. Further, no actual controversy exists in this regard, and there currently is no injury in fact; thus, this claim is not currently ripe for court review, and must be dismissed because appellant lacks standing.

VI

The School District was required to provide handicapped persons in private schools the protections under Rule 340.1723c to the same extent as the students of public schools, pursuant to MCL 380.1701 and 380.1296. Under Rule 340.1723c, the parent of a handicapped student from a private school may submit a disagreement with a public agency evaluation and request an IEE, and, once this request is filed, the School District should either honor the request or initiate due process proceedings pursuant to Rule 340.1724, within the proper period.

Affirmed.

GAGE, J., concurred.

TALBOT, P.J. (*dissenting*). Because appellant has paid for, and D.G. has already received, an independent

educational evaluation (IEE), there is no existing fact or right at issue, and appellant's claim is moot. I, therefore, respectfully dissent from the majority opinion because I would dismiss appellant's claims without reaching the merits of the issues.

The majority correctly points out that this Court may decide moot issues when "the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002). The doctrine of "capable of repetition, yet evading review," however, applies to prevent a case from being moot only when " '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.' " *Illinois State Bd of Elections v Socialist Workers Party*, 440 US 173, 187; 99 S Ct 983; 59 L Ed 2d 230 (1979), quoting *Weinstein v Bradford*, 423 US 147, 149; 96 S Ct 347; 46 L Ed 2d 350 (1975).

Here, appellant has made no showing that the challenged action is too short in duration to be fully litigated or that there is a reasonable expectation that it will be subjected to the same action, i.e., by the same party, again. The majority's argument—that this issue "could evade review if school districts refused to pay" for IEEs for other special education students because students could "potentially" be done with school before the matter makes it through the judicial process—is unsupported by any facts and amounts to nothing more than speculation. *Ante* at 267. To avoid mootness under the doctrine of "capable of repetition, yet evading review," however, the likelihood of the issue recurring must be greater than mere speculation. *Super Tire Engineering Co v McCorkle*, 416 US 115, 123; 94 S Ct

1694; 40 L Ed 2d 1 (1974). The appropriate test is
" 'whether the facts alleged, under all the circum-
stances, show that there is a substantial controversy,
between parties having adverse legal interests, of suffi-
cient immediacy and reality to warrant the issuance of
a declaratory judgment.' " *Id.* at 122, quoting *Maryland
Casualty Co v Pacific Coal & Oil Co,* 312 US 270, 273;
61 S Ct 510; 85 L Ed 826 (1941).

Appellant points out in its brief on appeal that a due
process hearing, a state level administrative appeal, and
a subsequent civil action could cost it tens of thousands
of dollars. Rather than incur these costs, appellant
chose to pay for D.G.'s IEE and then bring an action in
the circuit court for declaratory relief. By opting to pay
for D.G.'s IEE and to forgo the due process hearing set
out in 1999 AC, R 340.1724,[1] appellant has voluntarily
removed the immediacy and reality from its claim that
would give this Court the power to decide this issue. In
so finding, I echo the majority that this Court may not
"decide moot questions in the guise of giving declara-
tory relief." *Dep't of Social Services v Emmanuel Bap-
tist Preschool,* 434 Mich 380, 470; 455 NW2d 1 (1990)
(opinion of BOYLE, J.).

If appellant wanted a full review of whether 1999 AC,
R 340.1723c[2] required it to provide D.G. with an IEE at
public expense, it should not have voluntarily paid for
the IEE. Rule 340.1723c(2) gave appellant the option of
requesting a due process hearing to administratively
review its claims. Instead, appellant made a calculated
business decision that requesting the due process hear-
ing was not financially worthwhile and chose to pay the

---

[1] As amended, effective June 6, 2002; available at <http://www.
michigan.gov/orr> (accessed April 28, 2005).

[2] As amended, effective June 6, 2002; available at <http://www.
michigan.gov/orr> (accessed April 28, 2005).

$125 for the IEE. Appellant cannot voluntarily settle its claims, bypass administrative review of the Michigan Department of Education's determination, and then seek redress from the courts to settle potential future claims.

I would dismiss appellant's appeal as moot.